SEGUNDA, MATILDE, JUANA, CARLOS y MANUEL ROSADO DOMÍN-GUEZ y ANA ROSA DÍAZ, representada por su padre ANDRÉS DÍAZ, demandantes y apelados, *v.* MUNICIPIO DE JUNCOS, demandado y apelante.

Núm. 8250.—*Sometido:* Diciembre 3, 1941. *Resuelto:* Enero 16, 1942.

*J. Valldejuli Rodríguez,* abogado del apelante; *Francisco González Fagundo,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Puerto Rico Reconstruction Administration, una agencia federal mejor conocida por P.R.R.A., allá por el año 1938 construyó un acueducto para el Municipio de Juncos utilizando las aguas del río Gurabo, en un sitio denominado Quebrada Grande, del barrio Río, de Las Piedras. De acuerdo con lo convenido entre el Municipio de Juncos y la PRRA, eran de cuenta del primero todos los materiales que hubieran de necesitarse, haciéndose cargo la PRRA de los gastos de la mano de obra y del transporte de todos los materiales al sitio en que hubieran de utilizarse.

Los apelados, dueños de una finca de quince cuerdas lindante con el río Gurabo, precisamente en el sitio donde se edificó la presa del acueducto, instituyeron este pleito contra el Municipio de Juncos, sobre negatoria de servidumbre y daños y perjuicios. Luego de exponer en su demanda que son dueños de la aludida finca, que describen, alegaron:

"2. Que el Municipio de Juncos, representado por su alcalde Don Agapito González, ha penetrado en dicha finca y por medio de sus empleados y agentes ha destruído árboles de café y cavado zanjas y extraído tierra de la misma finca y además ha construído algunas casas y un camino a través de la finca a los fines de establecer un sistema de acueducto para el Municipio de Juncos y ha establecido una servidumbre de acueducto y ha establecido una presa sin título o derecho alguno para ello y sin compensación de ninguna clase para los demandantes.

"3. Que la finca descrita en la alegación primera de esta demanda se encuentra libre de toda carga o gravamen a favor del Municipio de Juncos o de ninguna otra persona natural o jurídica.

"4. Que con los actos realizados por el Municipio de Juncos se han causado daños y perjuicios a los demandantes que por lo bajo pueden calcularse en la suma de dos mil dólares."

A base de las anteriores alegaciones, terminaron la demanda con la siguiente súplica:

"Por lo que suplica de la corte se sirva dictar sentencia declarando que la finca descrita en esta demanda no se encuentra sujeta a servidumbre alguna a favor del Municipio de Juncos, condenándole a destruir cualquier obra que hayan ejecutado en la misma y

además al pago de dos mil dólares y las costas, incluyendo honorarios de abogados.''

Negó el Municipio de Juncos que dicha obra hubiera sido construída en terrenos de los demandantes, alegando en contrario que toda ella ha sido edificada en terrenos de dominio público, y expuso además ciertas defensas que no precisa expresar en detalle para la resolución de este caso.

Celebrado el juicio y luego de considerar la evidencia de una y otra parte, el juez inferior declaró probados los siguientes hechos:

''(a) Que los demandantes son los únicos dueños de la finca de 15 cuerdas; (b) que Segunda Rosado Domínguez y Manuel Rosa'ɔ Domínguez, condueños de la finca descrita, protestaron ante la Puerto Rico Reconstruction Administration y ante el Alcalde de Juncos, de los actos que se estaban llevando a cabo en su finca por los ingenieros y empleados que estaban construyendo el acueducto; (c) que el acueducto de Juncos se construyó por y para el Municipio de Juncos y que la Puerto Rico Reconstruction Administration no era ni podía ser responsable de los actos que se realizaban en los terrenos de los demandantes; (d) que los muros de la presa descansan sobre terrenos de los demandantes y que en éstos se abrieron zanjas, se colocaron tubos de acueducto y se hicieron otras construcciones; (e) que el Alcalde de Juncos realizó ciertas gestiones con el propósito de constituir en forma legal la servidumbre de acueducto sobre los terrenos de los demandantes; (f) que el Municipio de Juncos celebró un contrato de promesa de cesión de terrenos y otros derechos con Andrés Díaz, en 5 de marzo de 1938; (g) que la Puerto Rico Reconstruction Administration hizo un donativo de $35,000 al Municipio de Juncos para la construcción de su acueducto; (h) que los materiales para la construcción del mismo se compraban bajo la supervisión de la Puerto Rico Reconstruction Administration; (i) que los demandantes trataron de llevar a cabo con el Alcalde todas las gestiones necesarias a fin de constituir la servidumbre en forma legal; (j) que los demandantes nunca dieron su consentimiento para los actos que se realizaban dentro de su finca.''

A base de dichos hechos, dictó la corte inferior la siguiente sentencia:

"Por los fundamentos de la opinión que se une a los autos y se hace formar parte de esta sentencia, la corte declara con lugar la demanda y en su consecuencia resuelve que la finca descrita en esta acción no se encuentra sujeta a servidumbre alguna a favor del Municipio de Juncos, y condena a éste a destruir cualquier obra que haya ejecutado en la misma y además le condena al pago de las costas, gastos y $500 por concepto de honorarios de abogado"

No conforme el Municipio de Juncos, apeló para ante este tribunal, imputando a la corte inferior la comisión de seis errores, el primero de los cuales dice:

"Haber dictado sentencia contraria a la evidencia y a la prueba, ya que ésta demostró no solamente por el conjunto de la prueba, sino especialmente por la de los propios demandantes, que las obras del acueducto de Juncos están construídas en terrenos del dominio público."

Consideramos de tal importancia el primero de ellos que su discusión nos releva del estudio de los restantes.

La acción ejercitada por los demandantes es, como ya dijimos, la de negatoria de servidumbre y daños y perjuicios. En cuanto a estos últimos, la corte inferior declaró que los demandantes no presentaron evidencia alguna tendente a probarlos, y en cuanto a la acción principal, contrario a lo que afirma el juez inferior, no se han establecido los hechos necesarios demostrativos de que el municipio demandado haya realizado acto alguno en terreno de los demandantes, que sólo pudieran haber realizado mediante la existencia de una servidumbre de acueducto sobre dichos terrenos. En sus conclusiones de hecho antes transcritas asegura el juez que la prueba de ambas partes ha establecido que los muros de la presa descansan sobre terrenos de los demandantes y que en dichos terrenos se abrieron zanjas, se colocaron tubos de acueducto y se hicieron otras construcciones. Estos hechos esenciales a la existencia de la causa de acción ejercitada no han sido probados. Los artículos 32 y 34 de la Ley de Aguas prescriben:

"Artículo 32.—Álveo o cauce natural de un río o arroyo es el terreno que cubren sus aguas en las mayores crecidas ordinarias.

"Artículo 34.—Son de dominio público:

"1. . . . . . . .

"2. Los álveos o cauces naturales de los ríos en la extensión que cubren sus aguas en las mayores crecidas ordinarias."

Veamos ahora qué dice la prueba de una y otra parte respecto al sitio donde se construyeron la presa, los estribos y donde se colocaron los tubos de acueducto.

Emilio F. Saavedra, ingeniero civil que dirigió las obras del acueducto, llamado por los demandantes declaró:

"P. ¿En alguna ocasión usted presenció alguna creciente grande del río?

"R. Presencié tres crecientes.

"P. ¿Esas crecientes han llegado o no han llegado o han pasado del sitio donde estaban las obras?

"R. Taparon la presa, y taparon la tubería que teníamos puesta allí.

"P. ¿Lo que quiere decir que . . . pasaron?

"R. Sí, señor.

"P. ¿Quiere decir que pasaron sobre las obras?

"R. Como un metro o metro y medio sobre el *spillway*.

"P. O sea, ¿por dónde está tirada. . .?

"R. Por donde están tirados los tubos." (T. de E., pág. 30.)

En la página 32 de la transcripción de evidencia, interrogado por el demandante, dice:

"P. ¿Los estribos de la presa están en el aire o descansan. . . . ?

"R. Descansan sobre la barranca.

"P. ¿Descansan sobre la finca que don Andrés Díaz le dió permiso para entrar allí?

"R. Sí, señor."

Interrogado por el demandado:

"P. Una pregunta. Usted dijo, ¿qué quiso decir usted con que el estribo de la presa estaba en la finca ésa? ¿Está en la barranca más allá de donde pasan las aguas en crecientes ordinarias o más cerca de la posición donde no llegan las aguas del río en las crecientes ordinarias?

"R. ¿Usted sabe, licenciado, lo que son los estribos de una obra?

"P. Sí, señor. ¿Dónde están?

"R. Ahí está el plano; están sobre el barranco de eso.

"P. ¿Y por eso ha pasado el agua en crecientes ordinarias?

"R. Sí, señor. Ahí hay dos cruces de agua: agua de la quebrada y agua del río. Nosotros tuvimos que secar la quebrada y poner dinamita para desviar la corriente de la quebrada por otro lado. Cuando se juntaban las crecientes del río y de la quebrada la corriente era mayor. Yo estuve presenciando una creciente, parado sobre el piso de la caseta y al poco tiempo estaba el agua lamiéndome los pies. Eso trae mucha fuerza, trae un ciento por ciento de pendiente.

"P. ¿Y esas aguas siempre se han juntado desde tiempos históricos?

"R. Yo no puedo decirle.

"P. ¿Pero usted no ha estado allí?

"R. Sí, señor. La barranca hay que subirla en cuatro pies, y cuando yo estaba haciendo el estudio nada faltó para tener que amarrarse uno, porque es un risco y nos dió mucho trabajo.

"P. Y esas crecientes, ¿subían a ese sitio por mor de usted haber desviado la quebrada, o naturalmente subían las crecientes ordinarias?

"R. Subían naturalmente allí. Cuando yo llegué, allí habían vallados. Nosotros, cuando hacemos un estudio, primeramente vamos al sitio para ver el alcance que tiene el río, para hacer la obra.

"P. ¿Y consideran el cause del río?

"R. Sí, señor." (T. de E., pág. 36–37.)

Interrogado una vez más por el demandado:

"P. ¿De manera que los tubos también están en la barranca del río?

"R. Sí, señor.

"P. ¿O sea, en ese sitio donde hablaba el testigo que pasan las aguas en sus crecientes ordinarias?

"R. Sí, señor." (T. de E., pág. 44.)

La demandante Segunda Rosado interrogada por su abogado, declaró:

"P. ¿Han hecho algunas obras en esa finca?

"R. Sí, señor.

"P. ¿Qué pasa por esa finca?

"R. El acueducto.

"P. ¿El acueducto de dónde?

"R. De Juncos.

"P. ¿Qué han hecho para hacer el acueducto?

"R. Una represa.

"P. ¿Y qué más han hecho?

"R. Casas, caserío, pero ya lo han destruído. . ."   (T. de E., pág. 69.)

Tal fué la prueba testifical presentada por los demandantes en relación con la alegada servidumbre.   También presentaron, con la oposición del demandado, un croquis representando el sitio donde están la presa, los estribos, etc., ▄ pero ese croquis, aparte de no ser admisible por no haber comparecido su autor para ser repreguntado en relación con su contenido, no arroja luz alguna sobre la cuestión en controversia, pues en el mismo no aparecen indicados en forma alguna los terrenos que cubre el río en las mayores crecientes ordinarias, para poder así determinar, de acuerdo con los preceptos de la Ley de Aguas antes transcritos, si los terrenos donde enclavan dichas edificaciones pertenecen a los demandantes o si por el contrario son de dominio público, en cuyo caso ningún derecho tienen los demandantes a impedir tales obras.

La declaración de Segunda Rosado en cuanto afirma que el acueducto de Juncos se hizo en su finca es una mera conclusión de la testigo, pues dicha declaración no es incompatible con la del ingeniero Saavedra y la de los testigos del demandado al efecto de que los muros de la presa, los estribos y los tubos del acueducto se hallan todos en terrenos que aunque aparentemente pertenecen a la finca de los demandantes, por ministerio de la ley son de dominio público, ya que los cubren las aguas del río en sus mayores crecientes ordinarias.

La prueba del demandado sobre esos extremos es la siguiente:

José Castro Martínez declaró ser ingeniero de la División de Terrenos Públicos en el Departamento del Interior y que fué al sitio donde está la presa para determinar si fué construída sobre terrenos de dominio público; que a ese efecto observó las huellas de las crecidas y que la presa, los muros

y los estribos se hallan en el cauce del río. (T. de E., págs. 104–105 y 107.)

José Lao Díaz declaró que a la fecha en que se celebró el juicio tenía sesenta y nueve años de edad y que siempre había vivido en aquel barrio; que ha visto muchas crecidas del río y que la presa y los estribos están dentro de la extensión de terreno que cubren las aguas del río en sus mayores crecidas ordinarias.

El testigo Emilio F. Saavedra, llamado por el demandado declaró que observó tres crecidas ordinarias del río Gurabo en aquel sitio, y contestando al demandado dijo:

"P. ¿Y usted dice que en esas tres crecientes que observó, las aguas sobrepasaron la línea donde está emplazada la presa?

"R. Sí, señor." (T. de E., pág. 119.)

En verdad no nos explicamos cómo el juez inferior pudo considerar probado que las obras antes mencionadas fueran edificadas en los terrenos pertenecientes a los demandantes. Quizá sea cierto lo que ellos afirman en su demanda, pero con la prueba que consta de los autos no es posible sostener una sentencia que como la de autos condena al Municipio de Juncos *a destruir cualquier obra que haya ejecutado en la finca de los demandantes*, sin especificar siquiera cuáles son dichas obras, y sobre todo si se tiene en cuenta que lo que se ordena es la destrucción de un acueducto que de acuerdo con la prueba costó alrededor de $80,000, con una evidencia tan insuficiente como la presentada por los demandantes. [4] Aunque convenimos con los apelados que la propiedad se presume libre de gravámenes, sin embargo a ellos incumbía probar que las obras del acueducto fueron levantadas en terrenos de su propiedad, para que entonces incumbiese al demandado la prueba de la existencia de la servidumbre que permitía la edificación de dichas obras en aquel sitio.

No estando sostenida la sentencia por la prueba, *procede su revocación, con costas a los demandantes, sin incluir honorarios de abogado.*

El Juez Asociado Sr. Snyder no intervino.