María Mercedes Delgado, demandante y apelada, *v.* José M. Rodríguez Quiñones, demandado y apelante.

Núm. 10077.—*Sometido:* Febrero 1, 1950. *Resuelto:* Mayo 24, 1950.

446

*Antonio Reyes Delgado,* abogado del apelante; *G. Zeno Sama,* abogado de la apelada.

EL JUEZ PRESIDENTE SEÑOR DE JESÚS emitió la opinión del tribunal.

La demandante y el demandado son dueños respectiva-mente de dos fincas urbanas colindantes entre sí, radicadas en la Calle Coll y Toste de la ciudad de Arecibo. Cada finca consiste de dos casas; las que dan frente a la citada calle son de dos plantas, y terreras las edificadas en la parte posterior. Un callejón de dos metros de ancho separa la propiedad de la demandante de la del demandado. Las casas de éste tienen ciertos huecos y ventanas por el costado en que colindan con las de la demandante, con vista al citado callejón. Éste, según alega la demandante y acepta el demandado, pertenece a la primera. Para compeler al demandado a tapiar dichos huecos y ventanas, se interpuso acción negatoria de servi-dumbre, la cual fué declarada con lugar, después de un juicio en los méritos.

El fundamento primordial de este recurso va dirigido con-tra la apreciación de la prueba.

Para la mayor claridad de esta opinión, parece conveniente recurrir a las constancias del Registro de la Pro-piedad a fin de conocer la historia del callejón. Empezare-mos con la finca del demandado. Originalmente fué inscrita en la Antigua Anotaduría de Hipotecas, pero su primera inscripción en el Registro de la Propiedad data del 26 de agosto de 1890. En esta inscripción se describió como casa

con su solar, siendo la casa de altos de madera, bajos de
mampostería y techo de azotea, midiendo la casa "20 varas
de frente, o sean, 16.720 metros y 15½ varas de fondo, igual
a 12.958 metros, y teniendo el solar la misma superficie que
la casa, *más la porción reglamentaria de callejones*". (Bas-
tardillas nuestras.) Así continuó describiéndose en el Re-
gistro de la Propiedad hasta que en su inscripción 16ª exten-
dida el 28 de abril de 1936, a virtud de un acta notarial otor-
gada por Eulogia Colón Álvarez, entonces dueña del inmueble,
se expresó que practicada una mensura del solar y la casa
por el Ingeniero Civil Quintín M. Estrella, el 1ro. de abril de
1936, con la conformidad de los colindantes, resultó un au-
mento de cabida de 158.79 metros cuadrados y al describir
entonces la finca, se dijo que medía 18.57 metros por el norte;
16.70 metros por el sur; 21.46 metros por el este y 21.46
metros por el oeste, con área de 375.22 metros cuadrados, y
se dijo además, *que el solar tenía la misma superficie de la
casa.*([1]) Y en la inscripción 19, extendida el 20 de febrero
de 1940, la misma finca se describe así:

"Urbana. Finca compuesta de casa y solar descrita en su
inscripción décimosexta, como en el documento presentado, en
el que la casa que tenía fué destruída casi totalmente y en
su lugar se ha construído una casa de dos plantas de concreto
armado de dos pisos con más o menos las dimensiones del
solar . . . . . . . ."

Si en 1890 cuando se practicó la primera inscripción la
casa medía 16.72 metros de frente por 12.958 metros de
fondo "más la porción reglamentaria de callejones", y en
1936 se consignó en la inscripción 16 que el solar tenía la
misma superficie de la casa, y se dijo que por el Norte, que es
el frente, medía 18.57 metros en vez de 16.72 metros y por el
fondo 21.46 metros en lugar de 12.958 metros como se decía
en la inscripción primera, es lógico concluir que entre las dos
fechas antes indicadas la casa debió ser reconstruída cu-

---

([1]) Compárense estas medidas con las que aparecen de la inscripción
primera.

briendo con la edificación los llamados "callejones reglamen-- tarios". Y en la hipótesis de que las ventanas existiesen en la casa original con vistas al "callejón reglamentario", al reconstruirse la misma llegando su pared contigua a la de la demandante hasta la colindancia del solar, desapareciendo así los callejones reglamentarios, no había derecho a construir tales ventanas. No obstante el tiempo que hubiere transcu-- rrido desde que se abrieron hasta el 12 de febrero de 1948 en que se radicó la demanda de este caso, no pudo el deman- dado adquirir servidumbre por prescripción, sencillamente porque no existió hasta el 29 de enero de 1947 (²) el acto formal u obstativo a que se refiere el artículo 474 del Código Civil. (³)

El demandado pone gran énfasis en el hecho de que en la inscripción primera de la finca de la demandante no se men- ciona el solar, describiéndose solamente la casa que desde entonces era de dos plantas. Es en la inscripción 4ª prac- ticada el 10 de octubre de 1904, donde por primera vez se describe el solar, el cual según dicha inscripción, mide 18.50 metros de frente por 25 metros de fondo.

Esta circunstancia no significa que el solar perteneciese a distinto dueño. Tampoco, que alguno de los anteriores due- ños de la casa de la demandante se apropiara una faja de terreno del solar de la casa que hoy pertenece al demandado. Milita en contra de esta última hipótesis, la ampliación con- siderable de que fué objeto la casa del demandado y el hecho de que la de la demandante, desde que por primera vez se

---

(²) El acto formal u obstativo fué la carta que en representación de la demandante escribió Fidel Sevillano al demandado requiriéndole para que tapiara los huecos y ventanas.

(³) El artículo 474 del Código Civil prescribe:

"Para adquirir por prescripción las servidumbres a 'que se refiere el artículo anterior, el tiempo de la posesión se contará: en las positivas, desde el día en que el dueño del predio dominante, o el que haya aprove- chado la servidumbre, hubiere empezado a ejercerla sobre el predio sir- viente; *y en las negativas, desde el día en que el dueño del predio domi- nante hubiere prohibido por un acto formal al del predio sirviente la ejecución del hecho que sería lícito sin la servidumbre.* (Bastardillas nues- tras.)

inscribió en 1883, era de dos plantas y la escalera que conduce a los altos está emplazada precisamente en el callejón en controversia. Es muy significativo que las ventanas del demandado con vistas al callejón abren hacia dentro. Si el callejón era parte del solar del demandado, ¿por qué sufrir la incomodidad de que las ventanas abriesen para el interior de la casa? No podemos perder de vista, que como toda propiedad se presume libre de cargas, una vez que el demandante en una acción negatoria de servidumbre establece su título sobre la propiedad que alega está libre de ese gravamen, incumbe al demandado probar la existencia de la servidumbre. *Ramos* v. *Viejo,* 66 D.P.R. 642; *Rosado* v. *Municipio,* 59 D.P.R. 740 y *Balzac* v. *Torres,* 68 D.P.R. 983. Pero en el presente caso las constancias del Registro de la Propiedad y los hechos físicos se vuelven contra él. Por estas razones no podemos compartir la opinión del demandado al sostener que erró la corte a quo al consignar en sus conclusiones de hecho que el callejón en controversia nunca formó parte de su solar.

▨ La conclusión a que acabamos de llegar, simplifica considerablemente el problema y hace innecesaria la discusión de varias cuestiones que levanta el apelante basadas todas en que originalmente el callejón formó parte de su solar.

Arguye el apelante que al describirse en la demanda algunas de las ventanas que la demandante solicita sean tapiadas, no se expone que tengan vistas rectas a la finca de la demandante. Ello es cierto, pero lo es también, que se expone, y así resultó de la prueba, que dichas ventanas han sido abiertas en la pared del lado este del demandado, la cual se extiende casi paralelamente a la pared oeste de la casa de la demandante. En tales circunstancias, dichas ventanas necesariamente tienen vistas rectas, o de frente, a la finca de la demandante, pues el hombre, al usarlas, tiene la cabeza en su posición natural, de frente, en distinción de las vistas oblicuas, también llamadas de costado o laterales, en que por estar abiertas las ventanas en ángulo con la línea divisoria de las propiedades, el hombre para usarlas, tiene que volver la

cabeza hacia uno de los lados. Manresa, Comentario al Código Civil Español (3ra. ed. 1910) t. 4, pág. 777. Tampoco dejan de tener vistas rectas las persianas muertas o fijas, por el hecho de que para ver el inmueble de la demandante sea necesario mirar hacia abajo o hacia arriba. Ése no es el concepto de las vistas rectas. De otro modo, el dueño de una casa de más de una planta contigua a una más baja, podría abrir ventanas en pared paralela a la del colindante, a menos de dos metros de distancia de la línea divisoria, siempre que dichas ventanas estuvieren más altas que la propiedad del colindante. Cf. Revista de Derecho Privado, t. 4, pág. 85. Lo más que permite la ley al dueño de una pared no medianera contigua a finca ajena, es que abra ventanas o huecos en ella "para recibir luces *a la altura de las carreras, o inmediatos a los techos,* y de las dimensiones de 30 centímetros en cuadro, y en todo caso, con reja de hierro remetida en la pared y con red de alambre". (Bastardillas nuestras.) Artículo 517 del Código Civil. Los huecos y ventanas del presente caso no reúnen esas condiciones.

*Procede la confirmación de la sentencia.*

El Juez Asociado Sr. Snyder no intervino.