La Respetable Logia "Caballeros del Sur", Núm. 11258, demandante y apelada, *v.* Alfonso Feliciano, sustituído por Manuel Cordero Zavala, demandado y apelante.

Número 10543.
*Sometido:* 1 de mayo de 1952. *Resuelto:* 4 de marzo de 1953

---

*Erasto Arjona Siaca,* abogado del apelante; *Rafael Hernández Matos,* abogado de la apelada.

EL JUEZ PRESIDENTE SEÑOR SNYDER emitió la opinión del tribunal.

Éste es un recurso de apelación contra sentencia dictada a favor de la demandante por el anterior tribunal de distrito

en un caso de negatoria de servidumbres de paso y de luces y vista. En la controversia están envueltas dos propiedades contiguas radicadas en una de las principales calles pavimentadas de Ponce. La propiedad de la demandante consiste de 300 m.c. con frente al sur en 10 metros en los cuales está enclavada una casa de dos plantas que ocupa 6.6 metros de dicho frente y designada como la núm. 12 de la Calle Arenas. La del demandado consiste de 217 m.c. con casa de dos plantas, también con frente sur de 7.262 metros y tiene el núm. 14 de la Calle Arenas. Entre las dos casas hay un faja de terreno de aproximadamente dos metros de ancho que forma parte del solar de la demandante, que tiene el núm. 12 de la Calle Arenas. Tenemos que determinar en este caso si existe a favor de la propiedad núm. 14 de la Calle Arenas una servidumbre de paso sobre dicha faja de terreno de dos metros.

██ Será de gran ayuda a la resolución de este caso hacer una breve historia de ambas propiedades y el uso que se le ha dado a las mismas. Sin embargo, expondremos solamente aquellos hechos necesarios para resolver la cuestión ante nos. En dos etapas de su historia—antes de 1914 y entre 1939 y 1945—ambas propiedades pertenecían a la misma persona. En 1914 Julio Limardo y su esposa, quienes para esa fecha eran dueños de ambas, donaron la núm. 12 a su hija y a su esposo, Bernardo Segura, la cual fué inscrita en el Registro a nombre de éstos como finca separada e independiente. En 1939 la hija y su esposo vendieron a Narciso Barquet la finca núm. 12. El mismo año los herederos de Julio Limardo y su esposa vendieron también a Barquet la otra finca núm. 14. Barquet retuvo el título de ambas hasta 1945 cuando vendió la núm. 12 a la demandante. En 1946 Barquet vendió la núm. 14 a Alfonso Feliciano. Luego de interponerse este pleito y mientras el mismo estaba pendiente, el demandado, teniendo ya conocimiento del pleito, le compró a Feliciano la núm. 14.

Pasemos ahora al problema que surge del uso dado por las personas que ocupaban la propiedad núm. 14 en varias

etapas de la historia de las dos propiedades, a la faja de dos metros que forma parte de la núm. 12. Ambas casas siempre han tenido puerta de entrada y salida hacia la Calle Arenas. Sin embargo, durante el tiempo en que los Segura eran dueños de la núm. 12, las personas que ocupaban los locales en el patio y en la segunda planta de la núm. 14 usaban algunas veces, para entrar y salir de la núm. 14, la faja de dos metros que era parte de la núm. 12, cuando tenían algún inconveniente para usar la puerta de entrada de la núm. 14. Durante esa época no había cerca, valla o pared que impidiera dicho uso. Los dueños de la propiedad núm. 12 toleraron el uso de la faja de la finca núm. 12 por los ocupantes de la núm. 14, toda vez que algunos de los que ocupaban ambas casas durante muchos años eran miembros de la misma familia.

Mientras fué dueño de la núm. 12, Segura persuadió a su suegro, Limardo, que lo dejara construir pegado a la núm. 14 una edificación de tres setos para ser usada como garage de la núm. 12. Este "garage" consistía de alfajías horizontales con espacios o hendijas entre ellas. Las columnas de sostén del "garage" se extendían hasta la colindancia de las dos fincas. Esto hacía aún más conveniente a los que ocupaban la segunda planta de la núm. 14, quienes usaban una escalera exterior en el patio de la núm. 14 para llegar a sus viviendas, utilizar la faja de dos metros en la núm. 12 como entrada y salida a la calle, y así continuaron haciéndolo.

Resta sólo indicar que después de Barquet venderle la propiedad núm. 14 a Feliciano en el 1946, éste destruyó el rancho del "garage", y lo sustituyó por una habitación permanente con entrada separada a la Calle Arenas. Feliciano también le abrió dos ventanas a esta habitación, en la nueva pared de bloques de cemento que construyó hasta la colindancia de las dos fincas.

La cuestión primordial a determinarse en este caso es si bajo los hechos del mismo existe una servidumbre de paso a favor de la propiedad núm. 14 sobre la faja de terreno de dos metros que forma parte de la finca núm. 12. Toda vez que

tal servidumbre no aparece de las escrituras inscritas, sobre el demandado recae, para establecer su existencia, el peso de la prueba. (¹)　En vista de que anteriormente ambas fincas tenían el mismo dueño, el demandado descansa en el artículo 477 del Código Civil, ed. 1930. (²)　Pero para que bajo dicho artículo exista una servidumbre, ésta debe ser aparente.　Y el artículo 468 del Código Civil dispone que son "Aparentes, las que se anuncian y están continuamente a la vista por signos exteriores que revelan el uso y aprovechamiento de las mismas."　Deben existir algunas manifestaciones físicas de la servidumbre, tales como un pasadizo nivelado de brea o cemento, un callejón claramente trazado o algunos otros signos visibles de la servidumbre.　Véanse *Compañía Azucarera del Toa* v. *Galán et al.*, 28 D.P.R. 844; *Torres et al* v. *Plazuela Sugar Co.*, 24 D.P.R. 479; *Portela* v. *Societé Anonyme des Sucreries de Saint Jean*, 29 D.P.R. 927; 10 Scaevola, 5ta. ed., págs. 309, 430; 4 Manresa, 6ta. ed., págs. 643–44, 684; 3 Planiol y Ripert, Tratado Práctico de Derecho Civil Francés 751.　Y el signo "debe ser permanente, no variable ni accidental."　*González* v. *Fernández*, 49 D.P.R. 29, 31.　Véase *Rodríguez* v. *Suárez*, 71 D.P.R. 728.

El anterior tribunal de distrito halló probado el hecho de que "nunca ha existido signo aparente de servidumbre de clase alguna entre ambas fincas urbanas antes descritas establecido por el propietario de ambas."　De los autos surge amplia evidencia para sostener esta conclusión.　Ni antes de que se efectuara la venta de la propiedad núm. 12 en 1945 de Barquet a la demandante, ni en ninguna otra fecha hasta que

---

(¹) *González* v. *Hawayek*, 71 D.P.R. 528; *Delgado* v. *Rodríguez*, 71 D.P.R. 445; *Balzac* v. *Torres*, 68 D.P.R. 983; *Ramos* v. *Viejo*, 66 D.P.R. 642; *Rosado* v. *Municipio*, 59 D.P.R. 740.

(²) El artículo 477 prescribe lo siguiente: "La existencia de un signo aparente de servidumbre entre dos fincas establecido por el propietario de ambas, se considerará, si se enajenare una, como título para que la servidumbre continúe activa y pasivamente, a no ser que, al tiempo de separarse la propiedad de las dos fincas, se exprese lo contrario en el título de enajenación de cualquiera de ellas, o se haga desaparecer aquel signo antes del otorgamiento de la escritura."

surgió la controversia, hubo signo físico alguno en la faja de dos metros, indicativo de que pesaba sobre ella una servidumbre para el remanente de las dos propiedades, de las cuales Barquet fué dueño hasta que se efectuó la venta de la núm. 12 a la demandante. Por ejemplo, no había gravilla en la faja de dos metros ni ningún otro signo físico indicativo de la supuesta servidumbre. Por el contrario, siempre ha sido una faja abierta de tierra, sin marca alguna, que al observador común y corriente le parece meramente parte del predio núm. 12. Es cierto que durante un número de años la referida faja de dos metros algunas veces se usaba para la conveniencia de miembros de la misma familia y de sus inquilinos para entrar y salir de la propiedad núm. 14 de la Calle Arenas. También es cierto que posteriormente la entrada al patio de la núm. 14 se cerró con el "garage" improvisado, y con esto era aún más conveniente cruzar la faja de dos metros más bien que pasar por la puerta del frente de la núm. 14, con el fin de llegar hasta las viviendas de la segunda planta de la núm. 14 y a otros sitios de la misma. Pero estos hechos no constituyen prueba ni de un signo visible de servidumbre de paso ni de su permanencia de conformidad con los casos arriba citados. Por consiguiente, no podemos convenir con el demandado en que a tenor con el artículo 477 del Código Civil la faja de dos metros que es parte de la propiedad núm. 12 de la Calle Arenas, está sujeta a una servidumbre de paso a favor de la propiedad designada con el núm. 14 de la misma calle.

Lo mismo resolvemos en relación con la supuesta servidumbre de luces y vista. El improvisado "garage" construído por Segura en la núm. 14 hasta la colindancia de las dos fincas, tenía hendijas entre las alfajías de los lados y tenía pedazos de alambre cerca del techo para ventilación. En consecuencia era posible mirar desde allí hacia la propiedad núm. 12. Véase el artículo 517 del Código Civil. Pero estas hendijas de las alfajías no pueden considerarse como signos propios de una servidumbre. Además de ser

450

permanente, tal signo debe también ser "adecuado, propio y no equívoco o dudoso." 4 Manresa, 6ta. ed., 644. Las referidas alfajías irregulares y el alambre no cumplen con estos requisitos. Las ventanas que Feliciano abrió en la pared nueva después de 1946 caerían dentro de esta categoría; pero toda vez que éstas fueron abiertas *después* de haber Barquet vendido a la demandante la propiedad núm. 12 y a Feliciano la núm. 14, su existencia, desde luego, no puede ser base para una servidumbre de luces y vista bajo el artículo 477 del Código Civil. Toda vez que no existe base otra posible para una servidumbre de luces y vista, véase *Ríos* v. *Mercado*, 73 D.P.R. 840, tampoco erró el tribunal de distrito al declarar que no existía dicha servidumbre.

*La sentencia del anterior tribunal de distrito será confirmada.*