Juan Enrique Torres, demandante y apelado, *v.* Sucesión J. Serrallés, demandada y apelante.

Núm. 7934.—*Sometido:* Abril 3, 1940.—*Resuelto:* Octubre 24, 1940.

*F. Parra Capó* y *Leopoldo Tormes García,* abogados de la apelante; *E. Arjona Siaca,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON emitió la opinión del tribunal.

La apelante era la demandada en un pleito de *injunction.* Los señalamientos primero, segundo y décimo-quinto son en síntesis que la corte de distrito cometió error:

Al conceder al demandante daños y perjuicios, no habiéndolos solicitado en su última demanda enmendada ni habiendo hecho enmienda alguna a la misma cuando en el acto de la vista solicitó esos daños y perjuicios.

Al no ordenar al demandante que especificara y detallara los daños y perjuicios sufridos con su correspondiente valoración.

Al no especificar en la sentencia los distintos elementos de daños y el importe de cada partida, privando así a la demandada de la oportunidad de impugnar la corrección de dichos justiprecios o de aceptar algunos y solicitar la revocación de otros.

El artículo 684 del Código de Enjuiciamiento Civil (edición de 1933) lee como sigue:

"Si se concediere un *injunction* sin haber mediado notificación a la persona requerida, podrá ésta, previo oportuno aviso a la otra parte, pedir que se revoque o modifique al juez que lo hubiere concedido, o al tribunal en que se hubiere incoado la acción. La solicitud podrá fundarse en la demanda o declaración jurada en cuya virtud fué concedido el *injunction* o en la declaración jurada que presentare la parte requerida, con o sin la contestación. Si la solicitud se fundare en declaraciones juradas por parte de la persona requerida, pero no de otro modo, la persona contra quien se hiciere la solicitud podrá impugnarla por medio de declaraciones juradas u otras pruebas, además de aquella en cuya virtud se hubiere otorgado el *injunction*. En todas las acciones en que se hubiere concedido un *injunction,* si se demostrare al tribunal que habría de sufrir grandes perjuicios la persona requerida, de continuarse el *injunction,* y que la persona en cuyo favor fué decretada podrá indemnizarse íntegramente de cualquier perjuicio que hubiere de ocasionarle la continuación de los actos objeto del *injunction,* durante la substanciación del litigio, podrá el tribunal, a su arbitrio, revocar o modificar el *injunction,* mediante fianza constituída por el requerido con fiadores aprobados por el juez y en la suma que fijare el tribunal o el juez, obligándose a satisfacer todos los daños y perjuicios que pudiera ocasionar a la persona en cuyo favor se hubiere decretado el *injunction,* la continuación de los actos denunciados mientras se estuviere tramitando el litigio. En el juicio deberá determinarse la cuantía de dichos daños y perjuicios, y si resultare victoriosa la persona en cuyo favor se había concedido el *injunction,* se incluirá en la sentencia la suma fijada para cubrir dichos daños y perjuicios, juntamente con los ra-

zonables honorarios de abogados; y para dar cumplimiento a esa sentencia podrá librarse ejecución contra la propiedad de la otra parte y de sus fiadores.''

Mediante la prestación de tal fianza la demandada había logrado la disolución de una orden de entredicho e impedido la expedición de un *injunction* preliminar. Como resultado de ello el trabajo que el peticionario trataba de impedir mediante *injunction* fué terminado antes de celebrarse la vista del caso. Durante el curso del juicio el peticionario trajo los siguientes hechos a la atención de la corte y manifestó substancialmente lo siguiente:

En ningún momento ha renunciado al derecho de un *injunction* perpetuo, pero las circunstancias han variado y procede la estimación de daños y perjuicios. Es discrecional que la corte decrete un *injunction* definitivo o hacer que se resarzan los daños ocasionados al peticionario, tanto de acuerdo con la ley local como con las autoridades.

El juez preguntó si en la petición se mencionaban daños y perjuicios. El peticionario contestó afirmativamente. El pleito se inició para impedir la continuación de la obra. Se alegan los daños y perjuicios como fundamento de remedio, pero el pleito no tiene como propósito el cobro de ninguna cantidad de dinero. La situación ha variado, la obra ya ha sido terminada. En su consecuencia, los daños pueden ser probados sin que haya una alegación específica en la demanda al efecto. La demandada acepta, continuó manifestando el peticionario, que el demandante alegó determinada cantidad de daños. Desde luego que no le obliga la cantidad—$2,000— que ha mencionado la parte demandada en su última contestación; pero eso da base a la corte para considerar la cuestión de los daños en relación con lo alegado en la petición. Entonces el peticionario leyó el artículo 684 del Código de Enjuiciamiento Civil, supra, e invocó los principios generales de equidad y leyó del tomo 32 de Corpus Juris, pág. 385, sec. 650.

Entonces el juez ordenó que se hiciera constar en el récord de una manera clara aquello sobre lo cual versaría la con-

troversia. El peticionario manifestó que aunque su derecho a obtener un *injunction* perpetuo en este caso no ha sido renunciado en forma alguna, no obstante de estimar la corte improcedente la concesión del remedio de *injunction* por haber terminado los actos de perturbación, deseaba y solicitaba que el tribunal procediera a la adjudicación y estimación de los daños y perjuicios que se le han irrogado, con motivo de los actos de la demandada, que se han expresado en las demandas y que motivan o motivaron el *injunction* original.

El juez manifestó que la demandada tenía derecho a alegar lo que creyera pertinente. La demandada dijo que la ley desde luego da el medio alternativo a la corte, pero que ella entendía que desde el momento en que prestó una fianza para levantar el *injunction* preliminar, el peticionario debió incluir la solicitud de daños y perjuicios, enmendando su demanda, porque tal como está redactado el *injunction* la corte vería que ese aspecto era demasiado vago e indefinido. Entonces la demandada leyó parte de la súplica. Por ende, la demandada era de opinión que al levantar el *injunction* preliminar el peticionario debió introducir la solicitud de daños y perjuicios.

La demandada entonces discutió extensamente otro punto que alegaba tenía algo que ver con la cuestión de si debían considerarse los daños y perjuicios en el pleito de *injunction* o si los mismos debían ser objeto de otro pleito. El juez manifestó que el peticionario había planteado la misma cuestión. La demandada replicó que si la corte aceptaba la teoría del peticionario ella tendría que oír prueba respecto a la procedencia de un *injunction* permanente. El juez estuvo de acuerdo y manifestó que el peticionario no había renunciado al *injunction* perpetuo. El peticionario manifestó: "Pues estamos de acuerdo." El juez preguntó si con ello se quería decir que la demanda se queda como está. El peticionario contestó: "Eso es," advirtiendo que en una demanda de *injunction* no pueden alegarse daños cuando es difícil el jus-

tiprecio de los mismos. Entonces el peticionario leyó de la petición.

El juez preguntó si el peticionario quería decir que dejaba su demanda como estaba y el peticionario contestó: "Ah, sí." El juez dijo que esto es siempre una cuestión abierta a discusión; que para no perder tiempo la corte tenía por hechas esas manifestaciones de la parte demandante, con la reserva que había hecho de que no renunciaba al derecho de *injunction* perpetuo, interesando que la sentencia fuera dictada con la alternativa de daños y perjuicios. El juez entonces preguntó si ésa era la médula de la cuestión. El demandante contestó afirmativamente. El juez manifestó que con estas reservas se entraría en el caso; que la cuestión de si procede o no el remedio ya se discutiría en el fondo; las partes presentarían sus alegatos y la corte los estudiaría y resolvería lo que procediera de acuerdo con los hechos y la ley. El peticionario entonces llamó a sus testigos y a los mismos se les tomó el correspondiente juramento. La demandada se conformó con manifestar que no tenía prueba.

Al finalizar el juicio la demandada manifestó que las partes habían convenido en presentar alegatos. El peticionario estuvo de acuerdo, pero solicitó que la corte limitara las cuestiones a ser discutidas. La demandada se opuso. El juez dijo que la cuestión principal era la de si procedían daños y perjuicios en este recurso. Ambas partes estuvieron de acuerdo. La demandada admitió que los daños y perjuicios procedían, pero fué del criterio de que para conceder daños y perjuicios en un pleito de *injunction* debían hacerse las alegaciones correspondientes. No se había hecho tal cosa. El peticionario dijo que ellos discutirían esa cuestión en los alegatos.

El juez preguntó cuánto tiempo necesitaban las partes. El demandante manifestó que necesitaba 15 días después que la corte hiciera una "inspección ocular." La demandada dijo que necesitaba 15 días para contestar. El peticionario solicitó 5 días para replicar en caso de que ello fuera necesario.

La corte concedió al peticionario 15 días, a la demandada otros 15, y al peticionario 5 días adicionales para replicar. La demandada no radicó alegato en la corte de distrito.

La demandada no incurrió en su perjuicio en falsas apreciaciones por haber dejado el peticionario de enmendar la súplica de su petición para incluir en la misma la reclamación de daños y perjuicios. El alegato de la apelante agrega poco o nada a la sutil expresión del criterio enunciado por el letrado de la demandada en la corte de distrito. Deja de convencernos de que la corte de distrito cometiera error al conceder daños y perjuicios, no obstante la ausencia de una enmienda formal; o de que el error, de haberlo, justificaría la revocación de la sentencia. Además, en ausencia de una moción o de una solicitud específica para que se dictara una orden dirigida al peticionario para que especificara detalladamente los daños y perjuicios sufridos y la cuantía de los mismos, tampoco hallamos que se cometiera error al dejar la corte de ordenar que se enmendara la petición en ese sentido o al no especificar en la sentencia los distintos elementos de daños y perjuicios y el importe de cada uno de los mismos.

█ Los señalamientos tercero y cuarto son que la corte de distrito cometió error:

Al resolver que la demandada para hacer las reformas que hizo en su canal necesitaba instruir un expediente administrativo o iniciar una acción de expropiación forzosa, cuando las reformas que se hicieron no implicaban apropiación mayor de los terrenos del demandante que los que ya se venían utilizando con el viejo canal.

Al resolver que la demandada necesitaba permiso del demandante para hacer las reformas que hizo en el canal no tomándole mayor porción de la finca que la ya ocupada desde años atrás.

De la relación del caso y opinión de la corte de distrito tomamos los siguientes hechos probados:

El antiguo canal de regadío construído originalmente bajo una franquicia concedida en 1872 era de mampostería. Fué prácticamente destruído y reconstruído por la demandada en 1931. Se hicieron modificaciones en la toma de agua. El canal fué reconstruído

sobre la misma base. Se le hizo más alto y más profundo. La capacidad del canal es ahora algo más del doble de lo que era antes de la reconstrucción. En la toma se hicieron modificaciones que permiten que pasen por dentro de él todas las aguas estivales e invernales hacia ocho de las fincas de la demandada. El antiguo canal suministraba agua a solamente·tres de esas fincas. El curso del canal se modificó en un sitio que queda cerca de la casa del peticionario. No se instruyó procedimiento preliminar. No había prueba ·satisfactoria de que el peticionario se hubiere allanado a la reconstrucción del canal. El derecho de la demandada a utilizar las aguas ·del canal nacía de una franquicia concedida por el Gobierno en septiembre 30, 1872, al dueño anterior de una de las fincas de la demandada y de un Convenio de Regantes contenido en una escritura pública otorgada el 4 de diciembre de 1844. En la cláusula quinta de dicho convenio se establecía el orden en que se aprovecharían las ·aguas y se hacía una estipulación al efecto de que se instalara otro módulo automático que daría paso a 25 partes de las 100 expresadas ·en el mismo artículo 2 correspondientes a las Haciendas Ana María, Rita y Mallorquina. La cláusula 2 disponía que las aguas estivales .y sus aumentos naturales que restaran en dicho río después de deducidos los 76 litros y 58 centilitros de aguas preferentes se dividirían en cien partes iguales de las cuales correspondían a la Hacienda Vista Alegre 22½ partes; 25 partes a las Haciendas Rita, Ana María y Mallorquina; 10 partes a la Hacienda Teresa; 5 partes a la Unión; y 37½ partes a las Haciendas Merceditas, Laurel, Fe, Paraíso y Bronce. La cláusula sexta proveía que el punto de toma para cada uno de dichos aprovechamientos sería el mismo que el que actualmente tenía establecido en la cuenca que forman las diversas haciendas que se fertilizan con aguas del río Inabón.

Debido a las obras efectuadas en la reconstrucción del canal el demandante ha sufrido daños y perjuicios como consecuencia de la acumulación de grandes cantidades de tierras sacadas de excavaciones, provenientes de la destrucción de plantíos de café; inutilización de parte de su terreno por la acumulación de piedras procedentes ·del canal viejo destruído y por efecto de las mezclas del concreto sobre varios sitios de la finca; por depreciación en el valor de su finca con motivo del agravamiento o ampliación de la servidumbre de acueducto, la profundidad del cual se aumentó a más del doble de ·la primitiva, todo ello sin el consentimiento del demandante, sin haberse instruído el oportuno expediente y sin acudir a una previa ʻexpropiación forzosa mediante la debida indemnización.

Si el dueño del predio sirviente se negare a consentir al establecimiento de la servidumbre de acueducto "dentro de otro acueducto preexistente" el establecimiento de la servidumbre adicional puede efectuarse instruyéndose el expediente oportuno "previa indemnización si se le ocupare mayor zona de terreno." Artículo 84 de la Ley de Aguas. Este artículo no autoriza el establecimiento de una servidumbre adicional sin el consentimiento del dueño del predio sirviente y sin la formalidad de un procedimiento, mediante la construcción de un canal en la base original que dobla su capacidad aumentando la altura de sus murallas y obstruyendo así el libre tránsito de una parte del predio sirviente a la otra y aumentando el riesgo de accidentes o muertes por inmersión para los niños y para los animales, depreciando así el valor del predio sirviente aunque no "se le ocupare mayor zona de terreno."

"Cuando el dueño de un acueducto que atraviesa tierras ajenas solicite aumentar su capacidad para que reciba mayor caudal de agua, se observarán los mismos trámites que para su establecimiento." Artículo 94, Ley de Aguas, Estatutos Revisados, pág. 500.

La sección dos del Capítulo II, Título VII, tiene por título "De las servidumbres en materia de aguas." "El establecimiento, extensión, forma y condiciones de las servidumbres de aguas de que se trata en esta sección, se regirán por la ley especial de la materia *en cuanto no se halle previsto en este código*." (Bastardillas nuestras. Artículo 499 del Código Civil, ed. de 1930.)

"El dueño del predio dominante podrá hacer a su costo en el predio sirviente, las obras necesarias para el uso y conservación de la servidumbre, *pero sin alterarla ni hacerla más gravosa*." (Artículo 479 del Código Civil, ed. de 1930.) Véase también 4 Manresa, Comentarios al Código Civil, págs. 625, 626, ed. de 1931.

"Nadie podrá ser privado de su propiedad sino por autoridad competente y por causa justificada de utilidad pública, previa siempre la indemnización correspondiente.

"Si no precediere este requisito, las cortes de distrito ampararán, y en su caso, reintegrarán en la posesión al expropiado.

"La indemnización comprenderá no sólo el valor de la cosa de la cual el propietario es privado, sino que también una remuneración por los daños y perjuicios que se le ocasionen con la privación de la propiedad." Art. 282 del Código Civil, ed. 1930.

"Todo el que quiera servirse del agua de que puede disponer para una finca suya, tiene derecho a hacerla pasar por los predios intermedios, con obligación de indemnizar a sus dueños, como también a los de predios inferiores sobre los que se filtren o caigan las aguas." Art. 493.

"El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado." Art. 1802.

El viejo canal constituía una servidumbre establecida para beneficio de tres predios dominantes. Al aumentar su capacidad, la demandada trató de convertirlo en una servidumbre para beneficio de ocho predios dominantes. A fin de aumentar la capacidad del canal sus dimensiones originales fueron grandemente alteradas. La altura de sus paredes y la profundidad del agua fueron grandemente aumentadas en detrimento y haciendo depreciar el valor del predio sirviente, y la situación de parte del canal mismo sobre el terreno fué alterada. Todo esto se hizo sin el consentimiento del dueño del predio sirviente y sin la formalidad de un procedimiento administrativo o judicial.

La corte de distrito no erró en la forma alegada en los señalamientos tercero y cuarto.

■ El quinto señalamiento es que la corte de distrito erró al ignorar el hecho de que el demandante estuvo conforme con que circularan por el canal las aguas de las nueve concesiones y en que se llevaran a cabo las obras—surgiendo la discrepancia entre las partes sólo cuando estando en su principio los trabajos de reconstrucción que ya conocía el demandante, quiso éste que la demandada se obligara previamente a pagar la suma de $2,000 por los daños y perjuicios que

pudieran causarse en el futuro contra la oferta de la demandada de pagar los que realmente se causaran, con ofrecimiento de afianzar debidamente el compromiso.

Lo que el juez de distrito dijo, conforme ya hemos indicado, fué que no existía prueba satisfactoria de que el peticionario se hubiera allanado a la reconstrucción del canal. Aunque la cuestión era quizá debatible y pudo tal vez ser resuelta de manera distinta si la demandada hubiera radicado su alegato en la corte de distrito, no hallamos un error tan manifiesto en la apreciación de la prueba que exija la revocación.

El sexto señalamiento es que la corte de distrito cometió error al no practicar la segunda inspección ocular del canal propuesta insistentemente por la demandada, aceptada por el demandante, y dispuesta por la corte, a cuya discreción quedó la fijación del día en que debía llevarse a cabo.

El juez de distrito entendió que toda la cuestión relativa a la segunda inspección ocular y a la fijación de la misma se había dejado por las partes a su discreción. Ora estuviera equivocado o no en esto y ora hubiera acordado o no efectuar la segunda inspección, no obstante él tenía aún alguna discreción en torno a si debía visitar nuevamente el canal y no hallamos que exista un abuso de esa discreción al concluir más tarde que se hacía innecesario practicar una segunda inspección.

Los señalamientos 7, 9 y 14 son al efecto de que la corte de distrito cometió error:

Al afirmar que el derecho de servidumbre de acueducto perteneciente a la demandada nace de la concesión de riego otorgada por el Gobierno de España en 30 de septiembre de 1872 a favor de la Hacienda Ana María, modificado por la escritura llamada ''Convenio de Regantes'' otorgada el día 4 de diciembre de 1884; y al afirmar que la modificación del canal de riego violó la concesión de 1872 y el Convenio de Regantes de 1884.

Al considerar que las limitaciones establecidas en la concesión de 30 de septiembre de 1872 y el Convenio de 1884 protegen de alguna

manera al demandante en la servidumbre, cuando es lo cierto que esas limitaciones se establecieron única y exclusivamente como salvaguardia de los mismos derechos de los regantes.

Al afirmar que la concesión de 1872 y el Convenio de 1884 han sido violados por haberse hecho gravosa la servidumbre de acueducto, imponiendo al predio sirviente una nueva servidumbre sin consentimiento del dueño y en violación de su derecho de propiedad y sin haberse instruído el expediente que exigen los artículos 94, 185 y 186 de la Ley de Aguas, y en violación de lo dispuesto en el artículo 282 del Código Civil.

Éstas no son cuestiones fundamentales (*pivotal points*). Los errores, de haberlos, no serían motivos suficientes para revocar la sentencia.

El octavo señalamiento es que la corte de distrito cometió error al considerar de aplicación a este caso el artículo 479 y otros del Código Civil (1930) sobre servidumbres en general, cuando la ley aplicable al caso es la de Aguas y sus Reglas sobre ese mismo derecho de servidumbres. No hallamos conflicto alguno entre el artículo 479 y alguna de las disposiciones de la Ley de Aguas en que se funda la apelante. En ausencia de tal conflicto—por decir lo menos— no vemos razón alguna para que los principios generales que sirven de fundamento al artículo 479 y otros del Código Civil no gobiernen un caso de esta índole. Véanse también el artículo 479, supra, y 4 Manresa, Comentarios al Código Civil, pág. 711, edición de 1931.

Los señalamientos 10, 11, 12 y 13 son en síntesis que la corte de distrito cometió error:

Al declarar que la variante que se introdujo en el curso del canal ha perjudicado al demandante.

Al negar el derecho de la demandada a destruir aquellos arbustos que crecían en las márgenes del canal.

Al declarar que se inutilizó parte del terreno por la acumulación de piedras y mezcla de concreto.

Al considerar que la finca ha depreciado en su valor con motivo de una supuesta ampliación de la servidumbre de acueducto.

Las cuestiones que aquí se tratan de levantar, tal cual han sido discutidas en el alegato de la apelante, no requieren seria consideración.

*La sentencia apelada debe ser confirmada.*