NICOLÁS ROSA FÉLIX, demandante y recurrido, *v.* ACISCLO MEDINA CALDERÓN ET AL., demandados y recurrentes.

*Número:* 199        *Resuelto:* 26 de noviembre de 1963

*Arcilio Alvarado,* abogado de los recurrentes; *Obdulio Bauzá* y *Guillermo Bauzá,* abogados del recurrido.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

458

El Juez Asociado Señor Hernández Matos emitió la opinión del Tribunal.

Para el mes de noviembre de 1957 Nicolás Rosa real y físicamente poseía de buena fe y como dueño, y administraba una pequeña parcela de terreno compuesta de 5.50 cuerdas, radicada en el barrio Jiménez del Municipio de Río Grande. Se encontraba ese predio enclavado entre los terrenos de una finca de 22 cuerdas de Acisclo Medina Calderón—persona que le había cedido sus derechos sobre esa parcela—y otras fincas del barrio y carecía de salida propia a camino público. Dicho Medina Calderón le había concedido el derecho a pasar sobre su finca de 22 cuerdas y hasta la carretera pública denominada El Verde, a los fines de la explotación de aquel predio, por lo cual, durante las zafras de 1955 y 1956 Nicolás Rosa había transportado las cañas cultivadas en él por los terrenos de Medina Calderón.

Con motivo de actos realizados por Alejandrino y Acisclo Medina Gómez, hijos de Medina Calderón, que imposibilitaban todo tránsito por la finca de 22 cuerdas hasta la carretera El Verde, Nicolás Rosa instó una acción civil contra Acisclo Medina Calderón, sus dos hijos mencionados y contra otros diez hijos suyos. La demanda enmendada, que en ese litigio se presentó, fue contestada por casi todos los demandados. El juicio fue celebrado durante los días 11 y 12 de junio de 1959.

El 16 de julio siguiente se dictó sentencia declarando con lugar la demanda, disponiéndose en el fallo lo siguiente:

"Por los fundamentos de hecho y de derecho anteriormente expuestos, se declara con lugar la demanda y se ordena a los demandados Acisclo Medina Gómez y Alejandrino Medina Gómez, se abstengan de impedir al demandante en este caso a entrar o salir de su finca a través del camino a que nos hemos referido en esta sentencia. Se les ordena que eliminen las obstrucciones creadas en el mismo mediante la cerca que han puesto; se les prohibe la instalación de las mismas en el sitio donde están actualmente, tanto por sí como por medio de sus familiares, empleados, agentes, arrendatarios, cesionarios o inquilinos. Se les ordena, además, que permitan y que no interrumpan al deman-

dante en el uso de dicho camino para trasladar las cosechas y demás productos de su finca hasta la carretera que conduce hacia El Verde y a través de todo·el trayecto comprendido en el mencionado camino.

"Se condena a los demandados a pagar al demandante la suma de $3,000 por concepto de daños, más la suma de $500.00 por concepto de honorarios de abogado y las costas que dicho demandante ha incurrido con motivo de este litigio."

Hemos leído y analizado cuidadosamente la transcripción de evidencia y la prueba documentada ofrecida por ambas partes. El conjunto de la evidencia admitida por el tribunal de instancia comprueba que las conclusiones sobre los hechos del juez sentenciador—no impugnadas sustancialmente por los recurrentes—claramente representan el balance más racional, justiciero y jurídico que en el proceso de su aquilatación y evaluación podía efectuarse. [1] Los demandados-recurrentes no pidieron la reconsideración del fallo, ni que se formularan nuevas o adicionales conclusiones o se eliminaran o modificaran las consignadas.

Por su gran claridad y precisión en la exposición de todos los hechos, eventos y circunstancias concurrentes, estimamos conveniente la siguiente inserción de las conclusiones sobre los hechos del tribunal de instancia:

"Por el resultado de la prueba ofrecida, el tribunal entiende probados los siguientes hechos:.

"El 10 de julio de 1954 don Nicolás Rosa compró a don Acisclo Medina Calderón y esposa una finca en el barrio Jiménez de Río Grande, Puerto Rico. Dicha finca es equivalente a la sexta parte de una de 33 cuerdas radicadas en el mismo barrio. A pesar de que por la escritura número 59 otorgada ante el notario Pedro N. Sánchez en 10 de julio de 1954, se le vendió al demandante un condominio indiviso de una sexta parte de la antes mencionada finca, de hecho, a dicho demandante se le entregó una finca de cinco cuerdas y media que colinda al Norte

[1] De los autos aparece que en 14 de marzo de 1959 el tribunal de instancia practicó una inspección ocular de las propiedades envueltas en la controversia, fallándose el litigio por el mismo juez que la practicó.

y Este con terrenos de Acisclo Medina Calderón y su esposa Juana Gómez.

"El único camino público existente es el conocido como Carretera del Verde que conduce desde la Carretera Número Tres de San Juan a Luquillo hasta el Campamento de las Niñas Escuchas. Este es un camino embreado propiedad del Estado Libre Asociado de Puerto Rico.

"Don Acisclo Medina y su esposa poseen un predio de terreno que separa la propiedad del demandante del camino antes mencionado.

"La finca del demandante está totalmente sembrada de caña.

"Cuando don Acisclo Medina Calderón la vendió al demandante, se obligó, de conformidad con las disposiciones de la cláusula cuarta de la escritura de compraventa, a dar servidumbre de paso por su finca que colinda con la parcela del demandante a los fines de que éste pudiera sacar por dicha servidumbre los frutos y productos de su finca.

"Desde mucho antes de otorgarse la escritura de compraventa antes mencionada, existía un camino que partiendo de la colindancia de las dos parcelas se extendía a través de la finca del demandado hasta llegar a la carretera de El Verde.

"Con anterioridad al otorgamiento de la escritura de compraventa antes mencionada, don Acisclo Medina Gómez y su esposa y don Alejandrino Medina Gómez y su esposa habían edificado sus respectivas residencias en la propiedad de don Acisclo Medina Calderón.

"Tanto don Acisclo Medina Gómez como don Alejandrino Medina Gómez tenían conocimiento de la transacción llevada a cabo por sus señores padres con el demandante y les constaba de propio conocimiento la existencia del camino por donde se sacaban las cañas de la finca adquirida por dicho demandante.

"Con posterioridad a la radicación de esta demanda se realizaron gestiones a los efectos de que se permitiera al demandante sacar las cañas por la finca del demandante. [sic]

"El sitio que alegan don Acisclo Medina Calderón y su esposa debe ser usado para estos propósitos es claramente inadecuado. Los terrenos de la finca del demandante y la del demandado son muy accidentados. Entre la finca del demandante y la del demandado hay una hondonada. Esto quiere decir que para salir con cañas desde la finca del demandante hay que bajar hasta llegar al fondo y después subir una pendiente hasta llegar a la carretera.

"Después de radicada esta demanda se hicieron gestiones para que el demandado permitiera al demandante sacar las cañas por su finca hasta tanto el tribunal resolviera este caso.

"El sitio por donde pretende el demandado el demandante saque sus cañas es físicamente inadecuado para tal propósito.

"Los codemandados Acisclo Medina Gómez y Alejandrino Medina Gómez han cerrado y cercado la única salida adecuada y que siempre fue usada como tal para sacar los productos de la finca del demandante.

"Como consecuencia de estos actos de los demandados, el demandante no ha podido cortar las cañas en las zafras correspondientes a los 1957–58 y 1958–59.

"Con fecha 26 de agosto de 1957 los esposos don Acisclo Medina Calderón y doña Juana Gómez otorgaron escritura de Segregación y Compraventa ante el notario don Manuel Benítez Flores, de una parcela de una cuerda de terreno de la finca principal, a favor de Acisclo Medina Gómez y esposa, y en la misma fecha se otorgó ante el mismo notario la escritura número diez y seis a virtud de la cual los esposos don Acisclo Medina Calderón y su esposa Juana Gómez le cedieron a favor de su hijo don Alejandrino Medina Gómez y su esposa Adelina Villafañe, otra parcela de una cuerda segregada la misma también de la finca principal. Al segregarse como fincas independientes dichas dos parcelas, se incluyó en las mismas el área ocupada por el camino que le daba acceso a la finca del demandante a la carretera.

"Los demandados Acisclo Medina Gómez y Alejandrino Medina Gómez tienen cultivadas dichas parcelas, incluyendo la parte del camino.

"Los actos de los demandados al cerrar el camino y no permitir al demandante sacar sus productos desde su finca hasta la carretera, le han causado daño. La cuota asignada por la Administración de Agricultura Federal a la parcela del demandante es de 150 toneladas por zafra. En las zafras correspondientes a los años 1955–56 y 1956–57 dicha parcela produjo 150 toneladas de caña por zafra con un valor de $1,500 cada año. El demandante no ha podido cortar las cañas correspondientes a los años 1957–58 y 1958–59. Dichas cosechas fueron estimadas a razón de 150 toneladas por año con un valor de $1,500, lo que hace un total de $3,000 de daños sufridos por el demandante.

"Partiendo de la línea divisoria hacia la carretera existen

signos aparentes de una servidumbre de paso que terminan en el punto donde los codemandados Acisclo Medina Gómez y Alejandrino Medina Gómez han instalado unas verjas de alambre de púas.

"Don Acisclo Medina Calderón dio consentimiento expreso y se obligó por escritura a permitir que el demandante usara el camino en controversia.

"El demandante estuvo en posesión del camino objeto de esta controversia con un año de anterioridad a la interposición de la demanda.

"El camino usado por el demandante es de 10 pies de ancho y tiene el largo que separa desde la finca de cinco cuerdas a través de la finca principal propiedad del demandado, hasta la carretera que conduce hasta el camino El Verde. Pasa por la izquierda de la casa de José Medina Gómez, hijo de Acisclo Medina, y a la derecha de las casas de Alejandrino Medina y Acisclo Medina Gómez a una distancia aproximadamente de 250 metros de la casa de Acisclo y de 150 metros de la casa de Alejandrino. Estas residencias están ubicadas al lado derecho del camino."

Sostienen los recurrentes que el tribunal recurrido incidió en cinco errores. Alegan que el primero de ellos fue cometido al "declarar sin lugar la moción para desestimar la demanda enmendada", porque "se pretendía fundar una acción de injunction sobre un derecho no definido"; en otras palabras, arguyen que si, conforme a su título escrito de adquisición, el demandante únicamente era dueño de un condominio de una sexta parte sobre la finca de 33 cuerdas "que se poseyera en común proindiviso con otros dueños", él, individualmente, mientras durara esa indivisión y no se le adjudicara una parcela concreta y determinada de 5.50 cuerdas en pago de su sexta parte y su vendedor el codemandado Acisclo Medina Calderón constituyera sobre su finca de 22 cuerdas una servidumbre de paso en favor de la parcela específica de 5.50 cuerdas, carecía de acción para pedir a los tribunales que se le reconociera, protegiera y respetara su derecho de pasar por la finca de 22 cuerdas de Acisclo Medina Calderón.

■ No se ejercita por el demandante acción reivindicatoria respecto a una parcela concreta de terreno que forma parte de una finca principal de mayor cabida; ni de una cuestión sobre el mejor título a la misma; ni de una en que el actor debe demostrar previamente un título adquisitivo perfecto sobre un fundo determinado y particular. El demandante, como poseedor físico en concepto de dueño y de buena fe desde el 10 de julio de 1954, de una parcela de 5.50 cuerdas, sin salida propia a camino público, pidió al tribunal que se le restableciera y respetara en el uso y disfrute de un derecho que al momento de la venta le concedió su vecino el codemandado Acisclo Medina Calderón, para pasar por la finca de éste desde su parcela y hasta el camino público, porque los demandados le habían violado ese derecho y le hacían imposible su ejercicio mediante los actos dañosos descritos en la demanda enmendada.

Es cierto que al comprar su parcela de 5.50 cuerdas se hizo constar en la escritura de venta que se le transmitían "los referidos derechos y acciones sin limitación de clase alguna", es decir, los que se describieron en el párrafo Primero de la parte expositiva de esa escritura así:

"PRIMERO: Manifiesta don Acisclo Medina Calderón y su esposa doña Juana Gómez, ser dueños de las acciones y derechos montantes a una sexta parte sobre la finca rústica de Treinta y Tres Cuerdas ubicada en el barrio de Jiménez de Río Grande, Puerto Rico, y que se poseyera en común proindiviso con otros condueños nombrados Isaura, Basilia, Esperanza, Francisco y Miguel Quiñones Algarín; y la cual finca según expresan los comparecientes dicen está debidamente parcelada sin adjudicarse en escritura pública sus correspondientes títulos; por lo que potencialmente se reputa como indivisa a los efectos de este contrato."

Y es cierto también que en la referida escritura de compraventa se pactó:

"CUARTA: Estipulan las partes contratantes de que la parcela que extrajudicialmente ha de corresponder a las acciones y dere-

chos aquí vendidos una vez sea formalizada la divisoria en escritura pública; don Acisclo Medina se compromete a dar paso de servidumbre por su finca con la que colindaría la parcela que ha de formarse con las acciones y derechos en este documento trasmitidos a los esposos Gabino-Rosa."

Pero también es cierto que en las alegaciones de las partes fue aceptado que "la parcela propiedad de los esposos Gabino-Rosa [apellidos mal combinados del demandante y su esposa] colinda con una parcela propiedad de Acisclo Medina Calderón y Juana Gómez", y que, como correctamente concluyó el tribunal de instancia a base de la prueba practicada:

"A pesar de que por la escritura número 59 otorgada ante el notario Pedro N. Sánchez en 10 de julio de 1954, se le vendió al demandante un condominio indiviso de una sexta parte de la antes mencionada finca, de hecho, a dicho demandante se le entregó una finca de cinco cuerdas y media que colinda al Norte y Este con terrenos de Acisclo Medina Calderón y su esposa Juana Gómez."

Y también quedó ampliamente comprobado que el demandante, sin interrupción alguna, desde que adquirió en 1954 su parcela de 5.50 cuerdas y hasta fines del año 1957, había sacado, con el consentimiento expreso de Medina Calderón, a través de la finca de éste, las cañas de su parcela cultivadas y cosechadas en 1955 y 1956, utilizando un camino de la finca de Medina Calderón para toda clase de tránsito necesario al cultivo y explotación de su parcela. Véanse los testimonios de Acisclo Medina Calderón (T.E. págs. 54, 56, 59, 61, 62 y 63), Acisclo Medina Gómez (T.E. págs. 89, 92, 96 y 107, y Belén Villafañe (T.E. pág. 121).

En su demanda enmendada, entre otras cosas, expuso el demandante:

"3. La finca descrita en el apartado primero de esta demanda tenía constituida una servidumbre de paso sobre una finca de los demandados, que colinda con la de los demandantes y que está situada entre ésta y la carretera.

"4. Que esa servidumbre de paso (camino) es la única salida de la finca de los demandantes a dicha carretera, ha sido así

usada por cerca de 20 años, para sacar la caña, el tránsito de vehículos de todas clases y las bestias.

"5. Que hace un mes que los demandados cerraron el camino con dos cercas de alambre destruyendo el camino y desoyeron los requerimientos de los demandantes para que se abstuvieran de cerrarlo.

"6. Que la acción ilegal de los demandados le ha causado pérdidas irreparables a los demandantes y no le permitirá el sacar sus cañas a moler en la próxima zafra."

En *Martínez et al.* v. *Soto,* 32 D.P.R. 607, 610 (1923), resolvimos que cuando el derecho del demandante no ha sido establecido de acuerdo con la ley, o no es claro, sino que es dudoso sobre cualquier base que se coloque, no sólo por la contestación del demandado sino por la prueba en el pleito, no tiene dicho demandante derecho a un remedio mediante injunction. Pero ésa no es la situación en el presente recurso. Interpretando en conjunto la prueba de ambas partes, puede afirmarse que entre éstas se convino o concedió al demandante el derecho a pasar por la finca de Acisclo Medina Calderón, como salida más corta y practicable a camino público y para usarse en la misma forma en que Medina Calderón había utilizado su propia finca de 22 cuerdas para pasar los productos de la parcela de 5.50 cuerdas desde que la adquirió el 9 de agosto de 1943 hasta el día 10 de julio de 1954 en que la vendió al demandante. (2) Conforme a ese pacto, éste, sin ser inquietado por persona alguna hasta noviembre de 1957, usó de ese derecho de paso para sacar a camino público las cañas

(2)Medina Calderón en parte declaró:

"P. Cuando usted hizo ese contrato de venta de esa finca de cinco cuerdas con el señor Rosa Félix hablaron, o le pidió él que necesitaba aclarase sobre el sitio por donde había de sacar sus cañas?

"R. No, él no me pidió a mí por dónde sacarla; yo fui quien le dije que pasara por allí.

"P. Usted le dijo que pasara por allí, y por allí es por lo de quién?

"R. Por lo mío, cuando yo pasaba la caña mía cuando la tenía.

"P. Esa finca usted hace tiempo que la tenía, la de cinco cuerdas?

"R. No, esa finca la compré yo a unos herederos." (T.E. pág. 56.)

de su parcela cosechadas en 1955 y 1956 y para atender a su cultivo. Mientras prestaba testimonio, expuso el codemandado Acisclo Medina Calderón, a pesar de haber negado en su Contestación la concesión del paso, que nunca le había prohibido el paso al demandante y que estaba dispuesto a que éste continuara sacando sus cañas por su finca. (T.E. págs. 66, 67 y 72.)

Como poseedor real de ese derecho de paso, el demandante podía pedir "por los medios que las leyes de procedimiento establecen" que fuera amparado y protegido en caso de ser inquietado o perturbado en el mismo.—Art. 375, Código Civil.

Como propietario de una finca enclavada entre otras y sin salida a camino público, tenía derecho a exigir paso por las heredades vecinas—Art. 500, ídem—sin tener que indemnizar a su vendedor—Art. 503, ídem—y con mejor razón cuando éste se había obligado por escrito y verbalmente a concederle paso por su finca.

No cometió error, pues, el tribunal de instancia al negarse a desestimar la demanda enmendada.

■ En su segundo señalamiento sostienen los recurrentes que el tribunal de instancia erró al resolver el caso como si se tratara de un interdicto posesorio, dejando "de resolver el caso de injunction que tenía ante sí." Carece de méritos este señalamiento. La acción en realidad se desarrolló en la forma ordinaria y corriente. No se le dio el tratamiento procesal especial provisto para el interdicto posesorio, a pesar de que, en parte, el remedio concedido se asemeja al que puede disponerse en los interdictos posesorios. Por otra parte, no conocemos de ninguna disposición legal que prohiba concederse, por la vía ordinaria, los remedios provistos por el estatuto especial sobre interdictos posesorios.

En su tercer señalamiento sostienen los recurrentes que se cometió error al imponerles el pago de $3,000 por daños y perjuicios.

. Los motivos que aducen son los siguientes: (a) Que el tribunal de instancia consideró este caso como uno de interdicto posesorio al proteger a un supuesto poseedor y que en esta clase de acción no pueden concederse daños y perjuicios, (b) la condena es solidaria contra todos los demandados y (c) la demanda enmendada no contenía alegación alguna de daños ni se expresó en ella su cuantía.

Ya hemos dicho que el pleito se tramitó por la vía ordinaria. Así lo aceptan los recurrentes en su solicitud de revisión—págs. 7 y 8—. Lo que en él interesaba primeramente el demandante era un remedio urgente tendente a restablecer la situación anterior del camino y prevenir la ejecución de nuevos actos que le impidieran sacar sus cañas próximas a cortarse por el camino previamente pactado con Aciselo Medina Calderón. En la súplica de la demanda enmendada se solicitó "sentencia decretando un injunction perpetuo o permanente contra los demandados . . . con cualquier otro pronunciamiento que proceda en derecho." El juicio fue celebrado en junio de 1959, cuando, debido a los actos realizados, el demandante había dejado de cortar sus cañas por dos años consecutivos. Fue presentada prueba de los daños sufridos por el demandante con tal motivo, no obstante la oposición de los demandados. Éstos no pidieron la suspensión del juicio para aducir evidencia contra la ofrecida respecto a los daños. Cuando se les notificó la sentencia que los concedía no pidieron su reconsideración. Desde la terminación del juicio hasta que se dictó sentencia transcurrieron 34 días sin que ellos ofrecieran presentar evidencia alguna en oposición a la de los daños ofrecida por el demandante.

En una situación de hechos bastante similar a la del presente caso, se suscitó la cuestión de si podían concederse daños y perjuicios en un pleito de *injunction,* no obstante la falta de alegaciones , correspondientes en la petición. Nos referimos a *Torres* v. *Sucn. J. Serrallés,* 57 D.P.R. 539, 545 (1940), en el cual, entre otras cosas, dijimos:

"La demandada no incurrió en su perjuicio en falsas apreciaciones por haber dejado el peticionario de enmendar la súplica de su petición para incluir en la misma la reclamación de daños y perjuicios. El alegato de la apelante agrega poco o nada a la sutil expresión del criterio enunciado por el letrado de la demandada, en la corte de distrito. Deja de convencernos de que la corte de distrito cometiera error al conceder daños y perjuicios, no obstante la ausencia de una enmienda formal; o de que el error, de haberlo, justificaría la revocación de la sentencia. Además, en ausencia de una moción o de una solicitud específica para que se dictara una orden dirigida al peticionario para que especificara detalladamente los daños y perjuicios sufridos y la cuantía de los mismos, tampoco hallamos que se cometiera error al dejar la corte de ordenar que se enmendara la petición en ese sentido o al no especificar en la sentencia los distintos elementos de daños y perjuicios y el importe de cada uno de los mismos."

Teniendo en cuenta las disposiciones de la Reglas 13.2, 13.4, 44.3 y 50 de Procedimiento Civil, el haberse permitido la presentación de evidencia sobre daños y perjuicios y haberse concedido en la sentencia bajo las circunstancias concurrentes, no lo consideramos motivo que dé lugar a que se deje sin efecto su concesión en este caso. Sin embargo, estimamos que la evidencia ofrecida únicamente demostró una pérdida promedio anual de $650.00, es decir, por cada zafra, por lo que ascendían a $1,300.00 los daños realmente sufridos por el demandante. La suma de $3,000 concedida por daños debe rebajarse a $1,300.00.

■ Tienen razón los recurrentes al impugnar la imposición solidaria del pago de daños y perjuicios concedidos. Habiéndose alegado y probado que los daños causados fueron el resultado de actos realizados exclusivamente por los hermanos codemandados Acisclo y Alejandrino Medina Gómez, a éstos, solidariamente procedía condenárseles a su pago. Los otros hermanos codemandados y el padre de ellos Acisclo Medina Calderón, contra quienes no hay la más leve evidencia

de intervención con los derechos del demandante, deben ser absueltos de la imposición del pago de daños.

■ Los últimos señalamientos, cuarto y quinto, relativos a la errónea apreciación de la prueba documental y oral presentada por los demandados, que se discuten conjuntamente, carecen de méritos. Las conclusiones de hecho y de derecho a que llegó el juzgador indican claramente que esa evidencia fue aquilatada, ponderada y evaluada correctamente y que esa prueba no justificaba otro fallo en el caso.

Si bien hubo conflicto en la prueba respecto a la localización del camino, principalmente en su tramo cercano a la carretera pública, el juez a quo lo dirimió en favor del demandante.

■ La ley no impedía absolutamente a Acisclo Medina Calderón segregar de su finca de 22 cuerdas dos parcelas de terreno con un área de una cuerda cada una y venderlas por precios recibidos once años antes, según confesó en las escrituras públicas de 26 de agosto de 1957, a sus dos hijos Acisclo y Alejandrino, no obstante pasar por ellas el camino utilizado por el demandante para sacar sus cañas. Asumiendo que para tales segregaciones se hubiera cumplido con los requisitos exigidos por la Ley de Planificación y sus Reglamentos— circunstancia que no quedó probada en el juicio—aún así, Acisclo y Alejandrino estaban obligados a respetar el pacto de 1954 sobre el camino acordado entre su padre y el demandante, por el perfecto y directo conocimiento que tenían del pacto y del uso real que por dos zafras había hecho éste del camino para sacar sus cañas. (T.E. págs. 63, 106, 107.)

*La sentencia recurrida deberá modificarse rebajando a $1,300 el importe total de los daños e imponiendo su pago solidario exclusivamente a los codemandados Acisclo y Alejandrino Medina Gómez; a los otros codemandados se les deberá exonerar del pago de daños y perjuicios y de la suma de $500 concedida por concepto de honorarios de abogados, pero debiendo pagar solidariamente Acisclo y Alejandrino Medina*

*Gómez esta suma de $500 para honorarios de abogados; y así modificada, se confirmará la sentencia recurrida.*