JOSÉ IBÁÑEZ, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE BAYAMÓN, HON. ANTONIO S. NEGRÓN GARCÍA, JUEZ, demandado; MATEO ROSADO NEGRÓN, interventor.

*Número:* O-70-95      *Resuelto:* 9 de octubre de 1974

616

*Carlos Rivera Hernández* y *Juan Ponce Fantauzzi,* abogados del peticionario; *Pedro N. Ortiz,* abogado del interventor.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Se trata en este litigio de una demanda de servidumbre de paso a título gratuito, por razón de haber quedado encla-

vado el predio del demandante al ser dicho predio segregado y vendídole por los padres del demandado. Resulta atípico el caso debido a las circunstancias de que el demandado no fue el vendedor—y por ello alega su posición de tercero—pero, por otro lado, es hijo de los vendedores y se le imputa conocimiento de la situación fáctica. La ilustrada Sala sentenciadora en su primera y persuasiva opinión declaró sin lugar la demanda y en su segunda y también persuasiva opinión la declaró con lugar. La segunda opinión, desde luego, tuvo lugar en reconsideración.

Como los casos los hacen los hechos, vamos a poner éstos en orden para su más fácil entendimiento. El demandante, Mateo Rosado Negrón, es dueño de un predio rústico de seis cuerdas sito en Corozal, Puerto Rico, compuesto de cuatro cuerdas que compró a los esposos Ramón Ibáñez y Amalia Bou en 1944, de una cuerda que posteriormente también compró a los mencionados esposos Ibáñez-Bou y de otra cuerda que compró a Eleuteria Díaz en el año 1947.

El demandado, José Ibáñez, es dueño de un predio de ocho cuerdas, sito en el mismo lugar antes mencionado, que compró a sus padres Ramón Ibáñez y Amalia Bou en 1962. Este predio también es parte de la finca principal que era de los esposos Ibáñez-Bou. El predio del demandante y el del demandado colindan entre sí. También colinda el predio del demandante por el oeste con terrenos de la señora madre del demandado, Amalia Bou Vda. de Ibáñez, una de las vendedoras de los terrenos que compró el demandante.

En 21 de julio de 1964 Mateo Rosado presentó una querella en el Tribunal de Distrito, Sala de Toa Alta, bajo los términos de la Ley Núm. 238 de 8 de mayo de 1950 sobre controversias sobre colindancias y derechos de paso, 32 L.P.R.A. secs. 2861 y ss., contra la Sucesión de Ramón Ibáñez.[1]

---

[1] Tomamos conocimiento judicial de este procedimiento, Núm. Civil CD-64-10, llevado a cabo en el Tribunal de Distrito, Sala de Toa Alta, Puerto Rico, ya que en este país existe un solo distrito judicial, sobre todo

Alegó, en síntesis, que era dueño de las seis cuerdas antes mencionadas, cinco de las cuales las había comprado a Don Ramón Ibáñez; que su predio era parte de la finca principal propiedad de los querellados; que existe un camino que atraviesa la finca de éstos; que el querellante ha venido usando ese camino desde hace tiempo; que los querellados han obstruido dicho camino con una verja; y que ese camino es la única salida que tienen para ir al pueblo y regresar.

Aparecen en los autos originales del caso en el Tribunal de Distrito unas "Determinaciones de Hechos" pero como éstas no están fechadas ni firmadas por el juez, ni por nadie, no vamos a reseñarlas. Aparece, sin embargo, una sentencia firmada por el Juez de Distrito, Honorable E. Miranda Rivera, fechada a 20 de enero de 1965, la cual lee como sigue: "En vista a las determinaciones de Hechos y Conclusiones de Derecho estipuladas por los abogados de las partes el Tribunal por la presente les da su aprobación y dicta sentencia en armonía con la estipulación que obra en autos. Regístrese y Notifíquese."

La Estipulación mencionada en esa sentencia dice, en lo pertinente, lo siguiente:

"[L]as partes aquí comparecientes han convenido que se dicte sentencia en el presente pleito sujeto a lo siguiente:

(A) Que el querellado restaurará el portón de 'cyclone fence' existente actualmente, cuyo portón se compone de dos partes, una que da acceso para automóviles y la otra para personas.

(B) Que el querellado cerrará el paso que da acceso desde la casa de este hasta la casa de los querellantes con una cerca de alambre.

(C) Que el querellado proveerá a los querellantes una llave de los candados y cerraduras que tenga a bien instalar para controlar el paso de vehículos y/o peatones a través de dicho portón siendo los querellantes responsables del buen uso, de

---

el cual el Tribunal General de Justicia ejerce su poder y autoridad. Sección 1 de la Ley de la Judicatura, Ley Núm. 11 de 24 de julio de 1952, 4 L.P.R.A. sec. 1.

dicha llave de manera que no tenga acceso a la propiedad del querellado ninguna persona que no sea los querellantes y/o sus invitados, siendo responsables los querellantes de los actos suyos y/o de sus invitados dentro de la propiedad del querellado.

(D) Que el querellado permitirá acceso únicamente para pasar personas a pie desde el tramo que conduce de la casa del querellado hasta la casa de los querellantes, entendiéndose que bajo ninguna circunstancia pasarán automóviles o ninguna otra clase de vehículos a través del predio de terreno propiedad del querellado y que divide la finca del querellado de la casa de los querellantes.

(E) Que los querellantes se comprometen a hacer buen uso del derecho a tener acceso a su casa a través de la propiedad del querellado y a informar éste de cualquier acto o situación que pudiera dar acceso a dicha propiedad a terceras personas.

POR TODO LO CUAL, las partes comparecientes ·solicitan de este Honorable Tribunal que se sirva impartir su aprobación a la presente Estipulación y proceda a dictar la correspondiente sentencia en el presente caso con los pronunciamientos que tenga a bien hacer el Tribunal."

A los tres años y siete meses de haberse dictado la antes mencionada sentencia, Mateo Rosado, el querellante en los procedimientos en el Tribunal de Distrito, presentó en el Tribunal Superior, Sala de Bayamón, una demanda que tituló sobre acción confesoria de servidumbre. [2] Pero esta vez la

---

[2] La antes citada Ley Núm. 238 permite dictar una orden inapelable fijando un estado provisional de derecho, pero dicha orden no constituye cosa juzgada. 32 L.P.R.A. sec. 2866. En abono a la Asamblea Legislativa es justo consignar el propósito humano de dicha ley. En su exposición de motivos se expresa que las controversias sobre colindancias y sobre derechos de paso por fincas privadas generan pasiones que son fuente de delitos contra la persona. La Asamblea Legislativa quiso mediante la Ley 238 proveer un procedimiento sencillo y rápido que estableciese un estado provisional de derecho que fijase las relaciones y derechos de las partes mientras los casos se ventilan siguiendo los cursos ordinarios de la ley. Este procedimiento tiene el propósito de conservar la paz y evitar actos de violencia mientras la controversia se adjudica en su fondo. Véase el historial bajo 32 L.P.R.A. sec. 2861. Sobre este mismo asunto véase la Ley Núm. 140 de 23 julio 1974, 32 L.P.R.A. secs. 2871 y ss.

parte demandada no es la Sucesión de Ramón Ibáñez sino que lo es José Ibáñez, hijo de aquél.

Alegó otra vez el demandante que el predio que compró a Ramón Ibáñez quedó enclavado; que José Ibáñez compró ocho cuerdas a su padre Ramón Ibáñez; que el predio del demandante quedó enclavado dentro de las ocho cuerdas que José Ibáñez compró a su padre; que su predio tiene como acceso un camino de a pie a través de la finca del demandado por una distancia aproximada de 150 yardas, el cual desde hace años se ha venido utilizando; que el demandado le niega la servidumbre pues le impide la entrada de carros hasta su finca y le impide el ensanche y mejora de dicho camino en forma adecuada a las necesidades de su predio; y solicitó que el tribunal estableciese una servidumbre de paso gratuita a través de la finca del demandado del tamaño suficiente para el mejor uso y disfrute de su propiedad.

En su contestación a la demanda el demandado admitió los hechos neutrales—que el demandante es dueño de un predio, etc.—y negó los que comprenden la médula de la controversia —que el predio del demandante estuviese enclavado, que existiese servidumbre de paso, etc.—y reconvencionó por $3,000.00 por alegados daños debidos a las demandas del demandante.

Llamado el caso para la vista en su fondo compareció la parte demandante asistida de su abogado, el Lcdo. Pedro N. Ortiz, quien lo representaba bajo las disposiciones de la Ley Núm. 123 de 13 de julio de 1960, 5 L.P.R.A. sec. 1151, la cual creó en el Departamento de Agricultura una Oficina de Ayuda Legal Para Agricultores de Escasos Recursos. El demandado no compareció personalmente ni a través de abogado, no obstante haber sido este último citado y notificado del señalamiento, según expresa el Tribunal Superior en su opinión.

Celebrado el juicio el Tribunal Superior hizo en su opinión cuatro conclusiones de hecho. En las primeras tres concluyó que el demandante compró la propiedad antes mencionada; que la compró en las fechas y a las personas antes di-

chas; y que el demandado es dueño de la finca de ocho cuerdas antes dicha. En su determinación de hecho número 4, que es la crucial para la decisión del caso, el tribunal se expresó como sigue:

"4. Estudiada con detenimiento la prueba testifical y documental aportada, determinamos que las propiedades del demandante Rosado quedan enclavadas dentro de varias fincas, entre las cuales está la perteneciente al demandado Ibáñez. De la evidencia, también surge la existencia de un 'trillo' o 'caminito' que el demandante Rosado y su familia han usado desde aproximadamente 25 años por la finca ahora perteneciente al demandado Ibáñez. También la prueba indica, que dicho acceso ha sido utilizado a pie por el demandante para transportar sus productos y demás pertenencias y que 'hay otro camino, por una jalda, pero si llueve no se puede pasar.'

No se ha desfilado prueba demostrativa del monto de compensación que deba satisfacerse al demandado Ibáñez por el establecimiento de una servidumbre de paso."

No surge claramente de los autos si ese "otro camino" cruza por la finca del demandado o si pasa por la finca de otro colindante del demandante.

Como cuestiones de derecho razonó la ilustrada Sala sentenciadora en su conclusión de derecho número seis que aunque la finca del demandante está enclavada, éste nunca gestionó de sus vendedores—Ramón Ibáñez y esposa—la servidumbre de paso que ahora pretende obtener a título gratuito del nuevo dueño; que la servidumbre que preceptúa el Art. 503 del Código Civil, 31 L.P.R.A. sec. 1734, no le beneficia pues dicho artículo obliga al vendedor, permutante o copartícipe, pero no al demandado, por ser éste un tercero registral, ya que no fue él el que le vendió al demandante; (³) y que la mera tolerancia del demandado a que el demandante pasase

(³) "Si adquirida una finca por venta, permuta o partición, quedare enclavada entre otras del vendedor, permutante o copartícipe, éstos están obligados a dar paso sin indemnización, salvo pacto en contrario." Art. 503 del Código Civil.

por su finca no crea una servidumbre de paso gratuita sobre su predio. Además expresó el tribunal que el demandante pudo haber obtenido una servidumbre de paso sin indemnización de haber litigado contra sus vendedores, los esposos Ramón Ibáñez y Amalia Bou, y que por no hacerlo él era el único responsable de su situación. También se pregunta el tribunal de instancia "Si como surge de la descripción al presente de la finca, la misma tiene como colindante por el oeste a la señora Amalia Bou Vda. de Ibáñez—una de las vendedoras—*quaere* si el demandante puede ejercitar una acción de confesoria de servidumbre contra dicha persona." (Como veremos más adelante, el tribunal de instancia, en reconsideración, dejó sin efecto toda esta conclusión de derecho Núm. 6 que hemos reseñado.)

Finalmente determinó la ilustrada Sala sentenciadora que a tenor con las conclusiones de hecho y de derecho antes dichas declaraba sin lugar la demanda y desestimaba la reconvención interpuesta por el demandado. No impuso honorarios.

En reconsideración, la ilustrada Sala sentenciadora, en una breve sentencia concluyó como determinaciones de hecho adicionales que el demandante adquirió su predio hacía aproximadamente 25 años; que sus vendedores, Ramón Ibáñez y esposa, le permitieron utilizar "un caminito con una salida;" que el nuevo dueño José Ibáñez ha interrumpido el paso en distintas ocasiones; y que éste "tenía conocimiento propio o constructivo de la existencia del 'caminito' y que el demandante y su familia usaban el mismo."

En su sentencia en reconsideración, la Sala sentenciadora adoptó las conclusiones de derecho hechas en su primera opinión pero dejó sin efecto la número seis antes reseñada y se expresó, en lo pertinente, en la siguiente forma:

"Aplicado el derecho antes reseñado a los hechos considerados probados en el caso, procede declararse con lugar la demanda conforme el remedio solicitado. Esta conclusión está basada en el siguiente análisis: La finca del demandante Rosado está en-

clavada y cinco (5) cuerdas fueron adquiridas de los esposos Ramón Ibáñez y Amalia Bou, quienes a su vez le vendieron al demandado Ibáñez. Este último conocía la existencia de la condición 'de estar enclavada la finca' y de que el demandante utilizaba la finca de sus padres para entrar y salir a través de un caminito.

. . . . . . . .

Consideramos que en el caso de autos, debe reconocerse la servidumbre de paso—sin indemnización—que nació al quedar la finca del demandante enclavada en la de sus vendedores originales, quienes—hasta el traspaso posterior al demandado—la respetaron. A base de las necesidades de la finca en cuestión, reconocemos una anchura de diez (10) pies, debiendo dictarse Sentencia a tal efecto."

A petición del demandado expedimos auto de *certiorari*.

Estimamos que conviene exponer, aunque tenga que ser en apretada síntesis, el basamento jurídico de este caso. La materia de servidumbres está regida por el Título VII del Libro II de nuestro Código Civil, Arts. 465 al 540 de dicho cuerpo legal; 31 L.P.R.A. secs. 1631 a la 1831. Han hecho su exégesis en Puerto Rico con loable claridad Don Jacinto Texidor y Alcalá del Olmo y Don Guaroa Velázquez, ambos profesores que han honrado la Facultad de Derecho de la Universidad de Puerto Rico. El primero, en su artículo "Servidumbres," *Rev. Jur. U.P.R.*, Vol. II, p. 159, y el segundo, en su obra *Los Derechos Reales Principales Según la Legislación y la Jurisprudencia Puertorriqueñas*, U.P.R. (1937) mimeógrafo, págs. 216–241. Desde luego, discuten también la materia los tratadistas europeos de Derecho Civil. Aunque demasiado breves y generales, no dejan de tener interés las páginas del norteamericano Roscoe Pound en su monumental *Jurisprudence* (1959) Vol. V, págs. 171 y ss. Para estos *iura in re aliena*, dice Pound que prefiere el término *"limited real rights,"* en lo cual coincide con Castán, quien los llama "derechos reales restringidos."

Como se sabe, las servidumbres pueden clasificarse de distintas maneras, según el criterio clasificador que se utilice. Así, por ejemplo, por razón de su origen las hay voluntarias y forzosas o legales. Se llaman legales a las forzosas porque las impone la ley. Por razón de las formas de disfrutarse, las hay continuas y discontinuas. Por su exteriorización, las hay aparentes y no aparentes. Por la manera de ejercerse, las hay positivas y negativas. Distintas reglas gobiernan la adquisición y la extinción de las distintas clases de servidumbres.

En relación con el caso de autos podemos considerar varios supuestos.

Supuesto Número 1. Si la finca que Ramón Ibáñez le vendió al demandante Mateo Rosado quedó enclavada, el vendedor venía obligado a dar paso, sin indemnización, a su comprador. Dicho paso debía darse por el punto menos perjudicial al predio sirviente y, en cuanto fuere compatible con esta regla, por donde fuese menor la distancia del predio dominante al camino público. La anchura de la servidumbre de paso sería la que bastase a las necesidades del predio dominante. Arts. 501–503 del Código Civil, 31 L.P.R.A. secs. 1732–1734. Como puede verse, es el propósito de la ley que una finca no permanezca enclavada; pero, por otro lado, protege al predio sirviente de manera que el gravamen impuesto resulte lo menos perjudicial posible para dicho predio.

Supuesto Número 2. Si la finca no quedó literalmente enclavada, porque existía, en las palabras de la ilustrada Sala sentenciadora, "otro camino, por una jalda, pero si llueve no se puede pasar" habría que determinar cuán grave es la intransitabilidad de ese camino; porque el serio gravamen que constituye una servidumbre de paso sobre el predio sirviente no puede imponerse livianamente, sino que para que se considere insuficiente la salida esta debe presentar graves dificultades que solamente podrían vencerse realizando obras excesivas y de un costo fuera de toda proporción con el del predio dominante. *Román* v. *Jiménez*, 76 D.P.R. 569, 576 (1954).

De darse este segundo supuesto también venía el vendedor obligado a darle paso sin indemnización al comprador, pues para los efectos prácticos la finca habría quedado enclavada. Así también lo entiende la doctrina—Sánchez Román, De Diego, Manresa, Castán y la jurisprudencia.[4]

En los supuestos primero y segundo es claro el derecho del comprador contra el vendedor, pero normalmente no le asistiría dicho derecho contra el demandado, pues no fue éste quien le vendió y sería un tercero en esa situación. La obligación de proveer el paso sin indemnización el Código la fija claramente en el vendedor, permutante o copartícipe de la finca enclavada. Art. 503 antes citado. Esta situación queda sujeta a la posibilidad de signo aparente, la cual pasamos a mencionar.

■ Supuesto Número 3. Signo aparente. La servidumbre de paso puede ser aparente o no, dependiendo de que haya un camino visible o de que no lo haya. El Art. 477 del Código Civil, 31 L.P.R.A. sec. 1655, dispone que la existencia de un signo aparente de servidumbre entre dos fincas establecido por el propietario de ambas, se considerará, si se enajenare una, como título para que la servidumbre continúe, a no ser que, al tiempo de separarse la propiedad de las dos fincas se pacte lo contrario o se haga desaparecer aquel signo antes del otorgamiento de la escritura. Repetidamente hemos interpretado dicho artículo en el sentido de que se aplica no sólo cuando el propietario original de dos fincas establece una servidumbre de paso sobre una de ellas, sino también cuando sobre una finca poseída por un solo dueño éste establece un signo aparente el cual al venderse parte de la finca se convierte en servidumbre, quedando así un predio dominante y

---

[4] Castán, *Derecho Civil Español, Común y Foral,* Tomo II, Vol. 2, 10ma. ed. (1965), pág. 116; *Zayas* v. *Sucn. Daleccio,* 80 D.P.R. 158 (1957); Casellas, "Servidumbre Forzosa de Paso de la Accesibilidad a Camino Público: Zayas v. Sucesión Daleccio, 80 D.P.R. 158 (1957)," 28 *Rev. Jur. U.P.R.* 93 (1958).

un predio sirviente. Véanse *Rodríguez* v. *Suárez*, 71 D.P.R. 728, 732 (1950) ; *Margarida* v. *Casalduc*, 65 D.P.R. 416 (1945) ; *McCormick* v. *Vallés*, 55 D.P.R. 226 (1939).

En pura doctrina, mientras la finca pertenece en su totalidad a un solo dueño no puede éste establecer la servidumbre, ya que "la servidumbre es un gravamen impuesto sobre un inmueble en beneficio de otro perteneciente a distinto dueño," Art. 465 del Código Civil, 31 L.P.R.A. sec. 1631, pero lo que el dueño de la finca establece es el signo aparente, de manera que al venderse una parte de la finca a otro dueño entonces es que la servidumbre surge a la vida jurídica. La situación fáctica que en este supuesto hace posible el nacimiento de la servidumbre la establece el dueño antes de la venta.

■ Lo anterior es una excepción a la norma general de que para que una servidumbre surta efecto contra un tercer poseedor es preciso que conste inscrito en el Registro de la Propiedad el título constitutivo de aquélla. Lo que ocurre es que cuando los signos de la servidumbre son ostensibles e indubitados, su apariencia exterior le supone una publicidad equivalente a la de la inscripción, y por tanto surten efecto contra el adquirente del inmueble, aunque no resulte del Registro la existencia de la servidumbre. Castán cita varias sentencias del Tribunal Supremo de España en este mismo sentido. *Ibid.*, pág. 87. En la undécima edición de la misma obra, Tomo II, Vol. II (1973), pág. 107, dicho autor cita las sentencias mencionadas y una adicional de 21 de diciembre de 1970. Véase también *Martínez* v. *American Railroad*, 19 D.P.R. 974, 978 (1913).

■ El supuesto antes discutido—la constitución de servidumbre por signo aparente—es también una excepción a los términos del Art. 475 del Código Civil, 31 L.P.R.A. sec. 1653. Dicho artículo dispone, en lo pertinente, que las servidumbres discontinuas, sean o no aparentes, sólo podrán adquirirse en virtud de título. Como la servidumbre de paso se reputa discontinua parece caer dentro de la interdicción de este artí-

culo, pero la jurisprudencia y la doctrina han declarado que, como dijimos antes, cuando los signos de la servidumbre son ostensibles e indubitados, su apariencia les atribuye una publicidad equivalente a la de la inscripción. Dicha publicidad suple el título, una vez que así queda declarado por tribunal competente. Véase que el artículo siguiente, el 476, dispone que la falta de título de las servidumbres que no pueden adquirirse por prescripción se puede suplir por la escritura de reconocimiento o por una sentencia firme. El Art. 477 provee que el signo aparente se considerará como título en las circunstancias allí dichas.

■ Al operar dentro de este tercer supuesto—el de signo aparente—es necesario recordar que la mera existencia de veredas o trillos no equivale a un signo aparente de servidumbre de paso. *Goenaga* v. *O'Neill de Milán*, 85 D.P.R. 170, 216 (1962). Tampoco queda establecida dicha servidumbre por la mera tolerancia de dicho paso. *Goenaga* v. *O'Neill de Milán*, supra, pág. 203 y autoridades allí citadas.

■ Como aclara Morell, al comentar la antes mencionada jurisprudencia del Tribunal Supremo de España, esto no quiere decir que la servidumbre aparente haya de entenderse siempre como legalmente constituida, porque no basta su apariencia ya que podría existir por una mera tolerancia, en cuyo caso no adquiere fuerza legal. (5) Como señala la doctrina, las servidumbres no se presumen, sino que hay que probar su constitución. Castán, obra citada, pág. 79.

En *Nadal* v. *Muratti*, 34 D.P.R. 251, 257 (1925), el entonces Juez Presidente Sr. Del Toro, lo expresó con sabor local:

". . . El hecho del paso por mera tolerancia se repite constantemente en las fincas de Puerto Rico. Las crecientes de ríos y quebradas, el mal estado de ciertos caminos vecinales, los atrechos, las amistades, el establecimiento de escuelas y comercios en determinados sitios, el temor de provocar conflictos o

---

(5) Citado en *Colón* v. *Plazuela Sugar*, 47 D.P.R. 871, 877 (1935).

disgustos, el deseo de favorecer a los convecinos acortando distancias y facilitando el tráfico, y otras muchas circunstancias podrían señalarse como causa para ello . . . . Así el paso que meramente se permite subsiste generalmente mientras de él no se abusa . . . . Y así cuando se desea obtener un derecho absoluto y para siempre, se sabe que hay que ir al contrato, a la adquisición del derecho mediante la compensación apropiada, garantizando la ley hipotecaria por medio de la inscripción el derecho que se adquiera en cuanto a terceros."

Supuesto Número 4. Este cuarto supuesto supone la situación en que el demandado no estuviese obligado a proveer paso sin indemnización al demandante, por ser el demandado un tercero y por no existir signo aparente que lo obligue, pero en la cual la finca estuviese enclavada ya por no tener ninguna salida a camino público o ya porque, aunque teniéndola, ésta fuese imposible de utilizarse.

En esta cuarta situación el demandante tendría derecho a exigir paso por algún predio vecino, previa la correspondiente indemnización. Rige esta situación el Art. 500 del Código Civil, 31 L.P.R.A. sec. 1731, el cual dispone soluciones para cuando la servidumbre se establece en forma de una vía permanente y para cuando la servidumbre se limita al paso necesario para el cultivo de la finca enclavada y para la extracción de sus cosechas, sin que se establezca una vía permanente. En el primero de los casos—cuando se establece una vía permanente—dicho Art. 500 dispone que la indemnización consistirá del valor del terreno que se ocupe más el importe de los perjuicios que se causen al predio sirviente. En el segundo de los casos—cuando no se establece vía permanente sino que el paso se utiliza solamente para las labores de cultivo y de extracción de las cosechas—la indemnización consistirá en el abono del perjuicio que se ocasione al predio sirviente.

En esta última situación el paso podría ser por el predio del demandado pero no tiene que serlo necesariamente, ya que el paso debe exigirse por el punto menos perjudicial, siempre y cuando que sea adecuado, y en cuanto fuere compatible con

esta regla, por donde sea menor la distancia al camino público. Art. 501 del Código Civil, 31 L.P.R.A. sec. 1732; *Don Quixote Hotel* v. *Tribunal Superior*, 100 D.P.R. 19 (1971).

Una quinta situación la constituye la posibilidad de que, si la finca del demandante está realmente enclavada, no sea el demandado el que deba responderle sino la Sucesión de Ramón Ibáñez, de quién el demandado adquirió su predio.

■ El peticionario señala cuatro errores. El primero es al efecto de que erró el tribunal de instancia al negarle la oportunidad de presentar prueba en apoyo de su moción de reconsideración. Como el peticionario demandado no compareció a la vista del caso en su fondo celebrada en 25 de septiembre de 1969, ni tampoco compareció a la vista de la moción de reconsideración del demandante, celebrada en 30 de octubre de 1969, lo que realmente pretendió el demandado en su moción de reconsideración, luego de recaída la sentencia en reconsideración de 25 de noviembre de 1969, fue litigar entonces el caso. No abusó de su discreción el tribunal al denegar la presentación de prueba en esa ocasión. En cuanto al segundo señalamiento de error, éste envuelve otra tentativa 'del demandado para presentar prueba. Esto fue en efecto una segunda moción de reconsideración y el tribunal no erró al denegarla.

Los otros dos señalamientos son los siguientes. En uno se sostiene que el tribunal incidió al concluir que existía un derecho de servidumbre de paso sin indemnización y en el otro, que erró al ampliar el ancho de la servidumbre, pues, se argumenta, no se podía ampliar el ancho de una servidumbre que no existía.

■ A los efectos de resolver, aceptamos la conclusión del tribunal de instancia en el sentido de que la finca del demandante quedó de hecho enclavada. La existencia de un caminito o vereda de a pie no es el acceso adecuado que una finca y una residencia deben tener. Aceptamos también la determinación

**630**

del tribunal sentenciador en el sentido de que el demandado no es un tercero, que ignoraba la situación a la cual advino al comprarle a sus padres la finca antes mencionada, sino que por el contrario tenía conocimiento de que el demandante había adquirido su predio de sus padres y de que la finca del demandante estaba enclavada y éste entraba y salía por el terreno que el demandado compró. Como una vereda de a pie no es acceso suficiente, pues supone que todos los muebles—nevera, televisor, camas, muebles de sala, compra de víveres y demás enseres—tendrían que ser transportados a la residencia del demandante al hombro o sobre el lomo de una bestia, el acceso concedido por el tribunal de instancia es el adecuado y correcto. Creemos que esta solución encarna el balance más racional y justiciero de la controversia que este caso plantea. Véase *Rosa Félix* v. *Medina Calderón,* 89 D.P.R. 456 (1963). No se cometieron los errores señalados.

*Se confirmará la sentencia de la cual se recurrió.*

