FERNANDO DÍAZ, en su capacidad de PRESIDENTE DE LA JUNTA DE DIRECTORES DEL CONDOMINIO EL MONTE NORTE, demandante y recurrido, *v.* CONSEJO DE TITULARES DEL CONDOMINIO EL MONTE NORTH GARDEN, demandados y recurrentes.

*Número:* RE-92-71          *Resuelto:* 14 de enero de 1993

454

*Jorge M. Suro Ballester*, abogado de los recurrentes; *María Luisa B. Fuster* y *José Guevara Fuertes*, abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El Tribunal Superior, Sala de San Juan, declaró con lugar una demanda sobre interdicto permanente radicada por la Junta de Directores del Condominio El Monte Norte, determinando la inexistencia de una servidumbre de paso constituida por signo aparente en el caso de epígrafe. Inconforme, la parte demandada, Consejo de Titulares del Condominio El Monte North Garden, recurre ante nos. Revocamos.

I

En su origen, el proyecto integral de viviendas de alquiler El Monte Apartments, comprendía dos (2) multipisos: El Monte Norte y El Monte Sur; un grupo de edificaciones tipo *town houses*, El Monte North Garden (conocido como "las casitas"), y un área comunal recreativa ubicada en el lado este de El Monte Sur. Entre El Monte Norte y El Monte North Garden existía un área verde conocida como "la arboleda", cuyas aceras y caminos se extendían de un

condominio a otro sin que existiera delimitación física o interrupción alguna entre uno y otro predio.

El dueño de todo este complejo residencial perteneciente a una sola finca lo era El Monte Associates, L.P. Éste decidió convertir el referido complejo residencial de alquileres a uno bajo el régimen de propiedad horizontal. A esos efectos, el 13 de abril de 1966, la finca donde está localizado el Condominio El Monte Norte fue segregada de la finca principal para formar una finca independiente (finca #24149, Registro de la Propiedad de San Juan) y el 18 de diciembre de 1978, mediante escritura pública, dicho condominio fue sometido al régimen de propiedad horizontal. El área conocida como "la arboleda" quedó dentro de esta finca. De igual manera, el 15 de junio de 1978, la finca donde está situado el Condominio El Monte North Garden fue segregada de la finca principal para formar una finca independiente (finca #31096, Registro de la Propiedad de San Juan) y, con posterioridad, el 11 de abril de 1979, mediante escritura pública, dicho condominio fue sometido al régimen de propiedad horizontal. El Monte Associates, L.P. mercadeó la venta de ambos condominios presentando un concepto unitario de vivienda con facilidades y accesos comunes a todos.

A mediados de 1980, luego de convertidos los condominios al régimen de propiedad horizontal y de vendidas una parte sustancial de las unidades de vivienda, se instaló una verja de alambres eslabonados (*cyclone fence*) con un pequeño portón *sin* candado en la colindancia del Condominio El Monte Norte y El Monte North Garden. Los residentes de ambos proyectos continuaron teniendo libre acceso a las aceras, caminos y áreas verdes de los mismos. Condómines de El Monte Norte, sin embargo, se opusieron a la apertura del referido portón. Ello llevó a que en 1985 condómines de El Monte North Garden acudieran ante el Tribunal de Distrito, Sala de San Juan, en un procedimiento bajo la Ley Núm. 140 de 23 de julio de 1974 (32

L.P.R.A. secs. 2871 *et seq.* y 2871 n.), conocida como Ley sobre Controversias y Estados Provisionales de Derecho. Dicho foro emitió Resolución favorable a los querellantes en la que fijó un *estado provisional de derecho*, ordenando a los querellados a abstenerse de realizar cualquier acto que tendiera a impedir el libre accéso de los condómines de El Monte North Garden hasta tanto un tribunal de mayor jerarquía resolviera el asunto en forma definitiva.

El 31 de octubre de 1990, el Sr. Fernando Díaz, en su capacidad de Presidente de la Junta de Directores del Condominio El Monte Norte, radicó demanda de interdicto permanente y daños y perjuicios, objeto del presente recurso, en contra del Consejo de Titulares del Condominio El Monte North Garden. Alegó que la referida verja de alambres eslabonados en la colindancia de las fincas estaba siendo utilizada tanto por los condómines de El Monte North Garden así como por extraños para ganar acceso a las áreas comunes de El Monte Norte. Adujo, adicionalmente, que no existía servidumbre de paso alguna entre ambas fincas y a favor de uno u otro predio; que dicha entrada estaba creando una serie de problemas relativos a la seguridad de los condómines y de sus propiedades[1] y que tal actuación atentaba contra el derecho de éstos al disfrute pleno y pacífico de su propiedad, ocasionándoles daños irreparables. Solicitó se prohibiera el referido acceso. En su contestación a la referida demanda, el Consejo de Titulares del Condominio El Monte North Garden invocó como defensa afirmativa la existencia de una servidumbre de paso, *por signo aparente*, a su favor y en contra de la parte demandante; ello en virtud de las disposiciones del Art. 477 del Código Civil, 31 L.P.R.A. sec. 1655.

---

[1] Se alegaron los siguientes problemas: transgresión de áreas comunes, i.e., vestíbulos, patios, áreas de estacionamiento; actos de vandalismo a propiedad comunal; hurtos; incremento en costos de mantenimiento, vigilancia y seguridad en las áreas comunes de El Monte Norte y ruidos innecesarios que perturbaban la tranquilidad de estos condómines.

El tribunal a quo llevó a cabo una inspección ocular,[2] luego de la cual el caso quedó sometido. Ambas partes solicitaron se dictara sentencia sumaria a su favor.[3] En su moción de sentencia sumaria, la parte demandante alegó que ni de las escrituras de segregación de ambas fincas ni del Registro de la Propiedad surgía la existencia de servidumbre de paso a favor de uno u otro predio. De otra parte, esbozó que en la presente situación no se cumplían tres (3) de los cuatro (4) requisitos pautados por el referido Art. 477 para que quedara constituida una servidumbre de paso. La parte demandada se opuso y solicitó, a su vez, sentencia sumaria a su favor predicada en la mencionada defensa afirmativa.

El 19 de septiembre de 1991 el foro de instancia dictó sentencia sumaria a favor de la parte demandante. Descartó la postura de la parte demandada en torno a que las referidas aceras y caminos constituían un signo aparente de servidumbre de paso[4] y de la existencia per se de ser-

---

[2] Mediante la misma, el juez de instancia pudo comprobar: la existencia de aceras y caminos de hormigón entre uno y otro proyecto; la existencia de la verja de alambres eslabonados en la colindancia de ambos proyectos y de que ésta pasaba, en algunos tramos, por encima de varias aceras y caminos; que el portón de dicha verja daba acceso tanto a "la arboleda" de El Monte Norte así como a los patios de El Monte North Garden, y que los residentes de este último aprovechaban el mismo para disfrutar de la arboleda y para ganar acceso a la Avenida Hostos, al complejo recreativo de ambos condominios y al centro comercial El Monte, atravesando por el vestíbulo de El Monte Norte. De igual manera, el juez se percató de que los residentes de El Monte North Garden tenían acceso a las vías públicas mas, de éstos optar por ir a pie a los mencionados lugares, acortaban el tramo peatonal si atravesaban "la arboleda" y el vestíbulo de El Monte Norte.

[3] Ambas partes estuvieron contestes en torno a la inexistencia de controversia alguna con relación a los hechos esenciales del caso. Quedó pendiente de resolver solamente la controversia de derecho con respecto a la constitución de una servidumbre por signo aparente.

[4] A esos efectos, determinó que el concepto unitario que el proyecto tuvo en su origen cesó al segregarse la finca y someter las fincas independientes al régimen de propiedad horizontal, e indicó que tales aceras y caminos eran parte de varios *driveways, sidewalks* y *playground areas* de los jardines o áreas de recreo de cada condominio. Determinó, además, que no se trataba aquí de la servidumbre de paso típica que imponía el dueño en su finca a favor de otra "para llenar una necesidad de salida" (Apéndice, pág. 171) toda vez que la parte demandada sí tenía acceso propio a la vía pública.

vidumbre alguna en el caso de epígrafe. Conforme a ello, ordenó la clausura del portón y prohibió a los condómines de El Monte North Garden ganar acceso a la propiedad de los demandantes por el mismo. Por último, el tribunal condenó a la parte demandada a pagar las costas de litigio y le impuso mil dólares ($1,000) por concepto de honorarios de abogado.

El Consejo de Titulares del Condominio El Monte North Garden acude ante nos de este dictamen. Expone que el foro de instancia erró al no aplicar el Art. 477 del Código Civil, *supra*, a los hechos del caso y al imponerle honorarios de abogado. Expedimos el recurso solicitado. Ambas partes han comparecido. Resolvemos.

## II

Nuestro Código Civil, en su Art. 465 (31 L.P.R.A. sec. 1631), define la servidumbre como aquel gravamen impuesto sobre un inmueble en beneficio de otro perteneciente a distinto dueño. El inmueble a cuyo favor está constituida la servidumbre se denomina predio dominante; el que la sufre, predio sirviente. Las servidumbres pueden adquirirse: (1) por ley, (2) por título, (3) por prescripción o (4) por signo aparente.[5]

Con relación a este último modo de adquirir una servidumbre, el Art. 477 del Código Civil, *supra*, dispone lo siguiente:

La existencia de un signo aparente de servidumbre entre dos fincas establecido por el propietario de ambas, se considerará, si se enajenare una, como título para que la servidumbre continúe activa y pasivamente, a no ser que, al tiempo de sepa-

---

[5] La constitución de una servidumbre por signo aparente recibe diversas denominaciones según las opiniones que le apoyan, a saber, constitución "automática" de servidumbre, "establecimiento por signo aparente", "constitución tácita" de servidumbre o "constitución por destino del padre de familia".

rarse la propiedad de las dos fincas, se exprese lo contrario en el título de enajenación de cualquiera de ellas, o se haga desaparecer aquel signo antes del otorgamiento de la escritura.

Debemos examinar si las aceras y caminos objeto de la controversia de epígrafe cumplen con los cuatro (4) requisitos pautados por el citado artículo de manera que podamos concluir si quedó constituida o no una servidumbre de paso por signo aparente en el presente caso.

A. *La existencia de un signo aparente entre dos (2) fincas*

El signo aparente es la exteriorización o expresión manifiesta de un hecho visible que revela una relación de servicios en un determinado aspecto entre dos (2) fincas establecido por el dueño de ambas. Q.M. Scaevola, *Código Civil*, 5ta ed., Madrid, Ed. Reus, 1947, T. X, págs. 431–432; A. Tamayo, *El Derecho Real de Servidumbre*, Barcelona, Ed. Bosch, 1956, pág. 96. Su apariencia exterior presupone la servidumbre pretendida; de ahí que el legislador, en el Art. 477, *supra*, equipare el signo aparente al título. J. Bonet Correa, *La constitución tácita de las servidumbres en el Código Civil español,* 4 An. Der. Civ. 73, 92 (1951). Dado la apariencia manifiesta y la situación de hechos que revelan los signos aparentes de servidumbre, su existencia surtirá efectos contra el adquirente del inmueble objeto de la misma aunque no haya en el Registro de la Propiedad constancia alguna de su existencia. *Ibáñez v. Tribunal Superior*, 102 D.P.R. 615, 626 (1974). De igual manera, como la apariencia de esta servidumbre le atribuye una publicidad equivalente a su inscripción, la misma resulta ser una excepción a lo dispuesto por el Art. 475 del Código Civil, 31 L.P.R.A. sec. 1653, a saber, que las servidumbres discontinuas, sean o no aparentes, sólo podrán adquirirse en virtud de título. *Ibáñez v. Tribunal Superior*, supra, pág. 627. Esto es, el Art. 477, *supra*, aplicará a cualquier servidumbre, continua o discontinua, siempre y cuando ésta sea aparente. Ello es materia trillada en nuestra casuística y en la doctrina española. *Ibáñez v. Tribunal Superior*, su-

pra, pág. 627. M. Albaladejo, *Derecho Civil*, 5ta ed., Barcelona, Ed. Bosch, 1983, T. III, Vol. II, pág. 132; J. Castán Tobeñas, *Derecho Civil español común y foral*, 13ra ed., Madrid, Ed. Reus, 1983, T. II, pág. 125; J. Bonet Correa, *La constitución de las servidumbres por signo aparente*, Madrid, Ed. Gráficas Orbe, 1970, pág. 104; Scaevola, *op. cit.*, pág. 433.[6]

■■■■ Es debido a las repercusiones que una servidumbre constituida por signo aparente tiene en el tráfico jurídico de los bienes inmuebles que nuestra jurisprudencia reiteradamente ha señalado que el signo mismo ha de ser ostensible e indubitado, *Ibáñez v. Tribunal Superior*, supra, pág. 627, permanente, no variable ni accidental. *Delgado Cruz v. Girau Bernal*, 115 D.P.R. 61, 66–67 (1984); *Goenaga v. O'Neill de Milán*, 85 D.P.R. 170, 216 (1962). En cuanto al signo aparente que un camino o trillo pueda sugerir, en *Goenaga v. O'Neill de Milán*, supra, indicamos que la mera existencia de veredas, trillos o caminos irregulares no equivale a un signo aparente de servidumbre de paso. Tampoco queda constituida dicha servidumbre por la mera tolerancia de dicho paso. *Ibáñez v. Tribunal Superior*, supra; *Goenaga v. O'Neill de Milán*, supra, pág. 203. En *Logia Caballeros del Sur v. Cordero*, 74 D.P.R. 444, 448 (1953), expresamos, a iguales efectos, que debían "existir algunas manifestaciones físicas de la servidumbre, tales como un pasadizo nivelado de brea o cemento, un callejón claramente trazado o algunos otros signos visibles de la servidumbre".

B. *Que el signo aparente de servidumbre lo haya constituido el dueño de ambas fincas*

Señala el tratadista Bonet Correa en su obra *La constitución de las servidumbres por signo aparente, op. cit.*, pág.

---

[6] De ahí que resulte inaceptable la contención de la parte demandante a los efectos de que debido a que la alegada servidumbre de paso en el caso ante nos es aparente y discontinua, ésta debe constar en el Registro de la Propiedad o adquirirse por virtud de título para quedar constituida.

106, que resulta "indiferente que el signo fuese establecido por el último propietario o por uno de los propietarios anteriores, siempre que lo fuese durante la fusión de los predios". En aquellas situaciones en que la servidumbre hubiese existido entre dos (2) predios antes de su adjudicación por un sólo propietario, lo importante será que éste haya dejado subsistir o conservado la situación de servicio y su signo aparente hasta el momento de la nueva separación de la propiedad de las fincas. J. Puig Brutau, *Fundamentos de Derecho Civil*, 3ra ed., Barcelona, Ed. Bosch, 1979, T. III, Vol. II, págs. 414–417; M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Edersa, 1978, T. VII, Vol. II, págs. 71–72; *Delgado Cruz v. Giraud Bernal*, supra; *Ibáñez v. Tribunal Superior*, supra; *Rodríguez v. Suárez*, 71 D.P.R. 728, 732 (1950), y jurisprudencia ahí citada.

■ Como resulta obvio, por las consecuencias que acarrea la constitución de una servidumbre por signo aparente, el claro lenguaje del Art. 477, *supra*, no deja margen de duda alguna a que sea el propietario del predio quien establezca o conserve el signo aparente, excluyendo de tales actuaciones a los simples poseedores como el usufructuario, arrendatario o mero detentador. Puig Brutau, *op. cit.*

C. *Que una de las fincas sea enajenada*

■ El término "enajenación", dentro del citado Art. 477, ha de comprender todas las modalidades de la transmisión del dominio, tanto voluntarias como forzosas. Puig Brutau, *op.cit.*, pág. 417. Lo importante es que se separe la propiedad de las dos (2) fincas o que una (1) se divida en dos (2); que se dé la desintegración, ruptura o escisión de una finca del dominio confundido independientemente de cuál sea su modalidad de separación. Albaladejo, *Derecho Civil, op. cit.*, pág. 74; Bonet Correa, *La constitución de las*

*servidumbres por signo aparente, op. cit.*, pág. 91 y ss; Puig Brutau, *op. cit.*, págs. 417–418; F. Puig Peña, *Compendio de Derecho Civil Español*, 3ra ed., Madrid, Ed. Pirámide, 1976, T. II, pág. 463; Scaevola, *op. cit.*, págs. 438–440.

La enajenación, nos indica Bonet Correa, es el requisito sine qua non, sin el cual no tendría lugar la equiparación del signo al título, concurriendo, en adición, los otros requisitos pautados por el Art. 477, *supra*. Bonet Correa, *La constitución de las servidumbres por signo aparente, op. cit.*, pág. 92. La enajenación constituye uno de los pasos iniciales que hace posible el nacimiento de la servidumbre por signo aparente a la vida jurídica.[7]

D. *Que no se haya hecho desaparecer el signo aparente de servidumbre antes del otorgamiento de la escritura de enajenación o que no se haya hecho una manifestación contraria a la subsistencia del mismo en el título de enajenación de cualquiera de las fincas*

Para que una servidumbre por signo aparente no se constituya o venga a la vida, el propietario deberá desaparecer dicho signo previo a la enajenación de la finca. Dado que éste equivale al título constitutivo de la servidumbre, su eliminación o destrucción dará por terminada la existencia de ésta. Scaevola, *op. cit.*, pág. 440; Albaladejo, *Derecho Civil, op. cit.*, pág. 134. Aún si el propietario no destruyese el signo aparente de servidumbre, la misma no se constituirá si éste expresamente niega la existencia de tal servidumbre en el título de enajenación. *Ibáñez v. Tribunal Superior*, supra, pág. 625; *Rodríguez v. Suárez*, supra, pág. 733; *González v. Fernández*, 49 D.P.R. 29

---

[7] Como podemos notar, el Art. 477 del Código Civil, 31 L.P.R.A. sec. 1655, goza de una dicción inexacta al expresar que la servidumbre "continúa"; lo que continúa es la utilización del servicio toda vez que la servidumbre no nace sino hasta que se cumplen los requisitos exigidos por el referido artículo. J. Castán Tobeñas, *Derecho Civil español, común y foral*, 13ra ed., Madrid, Ed. Reus, 1983, T. II, pág. 113.

(1935); *Portela v. Societé Anonyme des Sucreries de Saint Jean*, 29 D.P.R. 927 (1921).

En torno a la naturaleza de la negación, Scaevola nos señala que:

La manifestación de la no existencia de la servidumbre ha de hacerse en el título de enajenación de cualquiera de las fincas, como dice el artículo, esto es, sea la que haya de convertirse en dominante o sirviente, único sentido en el que pueden aceptarse tales palabras; pero en la que se enajene primeramente. Desde este momento se crea un estado de derecho que no hay más remedio que respetar, sin que pueda ser alterado con posterioridad, a no mediar el consentimiento de los interesados[; además,] *la declaración ha de ser explícita; no debe dejar dudas acerca de la no existencia de la servidumbre. Es decir, deberá expresarse esto específicamente, no bastando la declaración genérica de que se transmite la finca sin carga alguna o sin ninguna clase de servidumbres, tanto porque esta declaración cabría aplicarla a las servidumbres que pudieran existir entre la totalidad de la finca, entre la unidad jurídica determinada por el dominio consolidado y otras fincas ajenas a él, como porque el artículo exige implícitamente una declaración particular respecto del signo existente.* (Énfasis suplido.) Scaevola, *op. cit.*, pág. 442.

Véanse, además: Albaladejo, *Comentarios al Código Civil y compilaciones forales, op. cit.*, pág. 75; Bonet Correa, *La constitución de las servidumbres por signo aparente, op. cit.*, pág. 122; Manresa, *op. cit.*, pág. 779. Aquellas manifestaciones que resulten meras cláusulas de estilo, genéricas y vagas en su redacción,([8]) y que no contradigan la apariencia patente del signo que entabla la relación de servicios que estableció el propietario de las fincas, en nada afectarán que quede constituida una servidumbre por signo aparente.

■ En suma, la inacción del propietario de eliminar o destruir un signo que evidencia una servidumbre previo a

([8]) A modo de ejemplo, frases como "libre de todo gravamen" o "libre de todas cargas y servidumbres" serán una negación insuficiente para rebatir la existencia de una servidumbre por signo aparente.

la enajenación de la finca, o la falta de una manifestación clara y específica en contrario a los efectos de negar la existencia de la servidumbre por signo aparente en la escritura de enajenación, tendrá la inevitable consecuencia de que nacerá o se constituirá la servidumbre por signo aparente.

*Este resultado, aunque para algunos resulte injusto, tiene su razón de ser.* Bonet Correa, en su obra *La constitución de las servidumbres por signo aparente, op. cit.*, pág. 91, recoge con claridad el ánimo que permea el Art. 477 de nuestro Código Civil, *supra*, equivalente al Art. 541 español. A esos efectos, expone lo siguiente:

> ...el ordenamiento, siempre atento a las seguridades del tráfico y a la garantía de sus relaciones, no defrauda a aquellas personas que de buena fe llegan a la estimación de ciertos objetos o derechos atribuidos que aparecen con determinados caracteres ventajosos al realizar un acto o negocio jurídico. De aquí que los signos aparentes en las cosas sean la expresión más clara de su existencia y que respondan a una actitud visible en el modo de proceder con los bienes; cuando ocurre una enajenación o traspaso del dominio de las cosas, si nada se dice, se implica lo que allí está y se ve; otro trato diferente supondría un fraude para el adquirente, quien vería burlado su derecho derivado de la apariencia de las cosas. El legislador toma así en cuenta las situaciones dignas de protección y les otorga un alcance jurídico. Esta es la función que cumple el artículo 541: dada una cierta situación de hecho, se presume un título cuando las partes nada han opuesto; de este modo los servicios establecidos por el propietario común entre sus fincas alcanzan en el momento de la enajenación la categoría de servidumbres. Es que la seguridad del tráfico jurídico actual, tan complejo, requiere un trato especial de garantía para ciertas relaciones y situaciones aparentes; ellas no son más que la prueba fehaciente del estado de las cosas, del título que ostentan y de los intereses que encierran.

## III

Un examen de las mociones de sentencia sumaria radicadas por las partes, y de los documentos que les acompañan, *nos lleva a concluir que en el caso de epígrafe se cum-*

*plieron los cuatro (4) requisitos exigidos por el Art. 477, supra, previamente discutidos.* En su origen, el único dueño de la finca donde estaban situados los condominios El Monte Norte y El Monte North Garden construyó un sinnúmero de aceras y caminos que respondieron al concepto unitario que éste le pretendió dar a dicho proyecto. A base de ello, las aceras y caminos conectaban uno y otro condominio y sus residentes gozaban de libre tráfico y de acceso común. No existe controversia en torno a la naturaleza física de las aceras y caminos aquí en disputa; los mismos, de aproximados cinco pies, seis pulgadas (5′ 6″) y construidos en hormigón no constituyen meros trillos o caminitos. *Goenaga v. O'Neill de Milán,* supra. Tampoco puede clasificarse su existencia como un acto de mera tolerancia por parte del dueño. *Ibáñez v. Tribunal Superior,* supra; *Goenaga v. O'Neill de Milán,* supra. Éstos constituyen signos ostensibles e indubitados de paso y su propia existencia, como ya indicáramos, respondió al destino que el único dueño de la finca les quiso dar. La finca original fue segregada y, posteriormente, las fincas independientes fueron convertidas al régimen de propiedad horizontal y se vendieron a personas particulares.([9])

No existe duda alguna de que el dueño original, previo al acto de enajenación, no eliminó las aceras y caminos en cuestión. Scaevola, *op. cit.*; Albaladejo, *Derecho Civil, op. cit.* Esto es, no destruyó o hizo desaparecer estos signos de aparente servidumbre de paso. Tampoco negó mediante escritura la existencia de la aparente servidumbre de paso sugerida por las aceras y caminos aquí en controversia.

---

([9]) Debe mantenerse presente que un apartamiento en un edificio sometido al régimen de propiedad horizontal no queda segregado y constituido como una finca aparte, autónoma y separada, por el mero hecho de otorgarse e inscribirse la correspondiente escritura matriz, sometiendo el edificio al régimen de propiedad horizontal. *R. Mix Concrete v. R. Arellano & Co.*, 110 D.P.R. 869 (1981). Por ende, la configuración de la servidumbre por signo aparente en esta clase de situaciones se da cuando se efectúa la venta de las unidades individuales; naturalmente, siempre que se den los otros requisitos dispuestos por el antes citado Art. 477.

*Ibáñez v. Tribunal Superior,* supra; *Rodríguez v. Suárez,* supra; *González v. Fernández,* supra; *Portela v. Societé Anonyme des Sucreries de Saint Jean,* supra. De hecho, no fue sino hasta que la mayor parte de las viviendas fueron vendidas a personas particulares que el dueño original procedió a instalar la referida verja de alambres eslabonados en la colindancia de ambos predios; no obstante ello, la instaló con un portón sin candado, respondiendo así al propósito que animó el proyecto original: permitir el libre tráfico y acceso común de los residentes de uno y otro condominio.

En vista de lo expresado, somos del criterio que las actuaciones de El Monte Associates, L.P., al construir y conservar las referidas aceras y caminos y no negar su aparente servidumbre mediante escritura, tuvieron la inescapable consecuencia de crear una servidumbre de paso por signo aparente en el presente caso. La situación creada por el dueño no puede tener otra consecuencia. Las expectativas creadas en todos aquellos compradores que adquirieron sus viviendas movidos por el concepto unitario que se les vendió y que de buena fe descansaron en el estado de hechos creados por tales signos aparentes, no admite otra solución.[10]

## IV

Habiendo resuelto lo anterior, consideramos los argumentos adicionales del foro de instancia en su sentencia. De entrada señalamos que la negativa del tribunal a quo a reconocer la existencia de una servidumbre en el caso de epígrafe obedeció, en parte, a que éste constriñó su análisis a la idea de que había *una* (1) sola servidumbre, lo que le

---

[10] Véanse declaraciones juradas en el Apéndice, págs. 129–133 y 157–158. La parte demandada cumplió con su peso probatorio de demostrar que quedó constituida una servidumbre de paso por signo aparente en el caso de epígrafe. *Logia Caballeros del Sur v. Cordero,* 74 D.P.R. 444, 447 (1953), y jurisprudencia allí citada.

llevó a concluir la imposibilidad de que un predio fuera sirviente y dominante a la vez. En su dictamen, el magistrado aborda su razonamiento de la siguiente manera:

> La posición que sostienen los demandados de que existe una servidumbre de paso a su favor a base de que los caminos y aceras constituyen un signo aparente de servidumbre se enfrenta al obstáculo de que tal alegación la pueden también esgrimir los condómines demandantes. Entonces, ¿cuál será el predio dominante y el predio sirviente? Si ese fuera el criterio, ambos predios serían dominantes y sirvientes recíprocamente. Desconocemos la existencia de tal clase de servidumbre de paso. Apéndice, pág. 170.

Erró en su proceder. La dificultad del tribunal al emitir su decisión estribó en intentar acomodar los hechos del presente caso en una estrecha situación bajo el concepto de una sola servidumbre. Las circunstancias particulares del presente caso, sin embargo, nos llevan a concluir y reconocer la existencia de *dos* (2) servidumbres de paso toda vez que ello responde al propósito que animó al dueño original de las fincas. El predio donde está localizado el Condominio El Monte Norte es predio sirviente del predio donde está situado el Condominio El Monte North Garden (predio dominante), en la medida en que condómines del segundo utilizan sus aceras y caminos para ganar acceso a la Avenida Hostos. De igual manera, el predio donde está localizado el Condominio El Monte North Garden es predio sirviente del predio donde está situado el Condominio El Monte Norte (predio dominante), en tanto en cuanto condómines de este último utilizan sus aceras y caminos para ganar acceso a las Calles Larrinaga y Abolición y a la Avenida Muñoz Rivera.[11] *En esta medida, ambos predios son*

---

[11] Entre los documentos que acompañan la "Oposición a moción de sentencia sumaria y/o solicitud de sentencia sumaria" (Apéndice, pág. 117) de la parte demandada existe un memorando suscrito por cincuenta y ocho (58) condómines de El Monte Norte de 29 de marzo de 1985 en el que se oponen a la limitación de uso y restricción de acceso del referido portón dado que ellos lo utilizan para ganar acceso a las referidas vías públicas. Apéndice, págs. 151(a) y (b).

*simultáneamente predios dominantes y sirvientes dado que cada fundo resulta a la vez beneficiado y gravado.*([12])

Por otro lado, debido al diseño con que gozó El Monte Apartments en su origen, las servidumbres de paso por signo aparente que ahora reconocemos inciden con elementos comunes tanto del Condominio El Monte Norte,([13]) así como del Condominio El Monte North Garden. Tales servidumbres no son ajenas a la doctrina española, la cual ha reconocido la constitución de servidumbres sobre o en beneficio de un edificio sujeto al régimen de propiedad horizontal([14]) aun bajo el supuesto del Art. 541 español, equivalente al Art. 477 nuestro, *supra.*

Por último, concurrimos con el foro de instancia en que la finca donde está localizado El Monte North Garden *no* es una finca enclavada por ésta tener acceso a vía pública. Sin embargo, el hecho de que esta finca tenga acceso a vía pública no excluye la posibilidad de que ésta adquiera una servidumbre de paso por signo aparente. Sabido es que la circunstancia de que una finca tenga acceso a camino público no impedirá la aplicación del Art. 477, *supra.* Si existe un signo aparente de la servidumbre de paso, ésta surgirá no empece a que el predio beneficiado ya

---

([12]) A modo de analogía, en nuestra jurisdicción se reconocen las servidumbres recíprocas en las servidumbres en equidad que se constituyen en las urbanizaciones. Éstas crean "una relación de servidumbres recíprocas pues cada solar es predio dominante a la vez que sirviente con respecto a los demás solares de la urbanización". J.R. Vélez Torres, *Curso de Derecho Civil*, Madrid, Ed. Offirgraf, 1983, T. II, pág. 417. Véase, a manera de ejemplo, la Sentencia de 30 de diciembre de 1975, Núm. 4846, XLII (Vol. II) Repertorio de Aranzadi 3666.

([13]) Por las circunstancias particulares del diseño y con relación a la propia servidumbre de paso constituida sobre El Monte Norte, ésta, en determinado punto, atraviesa el vestíbulo de dicho condominio. Esta servidumbre, aunque peculiar a las características propias del caso de epígrafe, no le resta al significado de este derecho real, pues, como es sabido, la servidumbre, precisamente, constituye una limitación del dominio de los que son propietarios del predio sirviente y tiene el inescapable efecto de alterar el contenido normal del derecho de propiedad de estos propietarios.

([14]) M. Fernández Martín-Granizo, *La Ley de Propiedad Horizontal en el Derecho español*, 3ra ed., Madrid, Ed. Edersa, 1983, págs. 209–211, 405–406 y 438–439; M.C. Gómez Laplaza, *Las servidumbres establecidas en interés de los propietarios en la Ley de Propiedad Horizontal,* 1977 Rev. Der. Priv. 329, 333–335 (1977).

tenga otro acceso a camino público, sea éste directo o en virtud de otra servidumbre. Albaladejo, *Derecho Civil, op. cit.*, pág. 132, citando las Sentencias de 10 de octubre de 1957 y de 26 de enero de 1971. Como bien señala este tratadista, "el interés que satisficies la servidumbre podría ser de cualquier clase: económico, de comodidad, estético, etc. ... el interés que la servidumbre puede satisfacer cabe que sea de necesidad (tener salida a camino público, una finca encerrada entre otras) o de utilidad (de mayor comodidad, o incluso de recreo, pero siempre, sin que haya necesidad: como tener salida amplia y cercana a camino público, por terreno ajeno, una finca que ya tiene por el suyo otra estrecha, larga e incómoda) ...". (Énfasis suprimido.) Albaladejo, *Derecho Civil, op. cit.*, pág. 111. Véase, además, Puig Brutau, *op. cit.*, pág. 415.

Por los fundamentos anteriormente expuestos, *se dictará sentencia revocatoria del dictamen emitido por el foro de instancia a favor de la parte demandante, declarándose con lugar la moción de sentencia sumaria de la parte demandada.*

El Juez Asociado Señor Fuster Berlingeri se inhibió.